803 F.2d 57
 Webster G. TARPLEY, Judah Philip Rubinstein, Fernando
Oliver, James B. Cokley, John Perrcone, Keith R.T. Perez,
Elizabeth Spiro-Carman, Gerald Mullins, Hulan E. Jack,
Jeremiah F. O'Neill, Charles H. Carman, Benjamin Oksoktaruk,
Robert W. Sterling and Joyce Thuman, Plaintiffs-Appellants,
v.
George D. SALERNO, R. Wells, Stout, Donald A. Rettaliata and
Thomas J. Sullivan, individually and in their official
capacities as members of the New York State Board of
Elections, Defendants-Appellees.
 No. 86-7797.
 United States Court of Appeals,
Second Circuit.
 Submitted Sept. 3, 1986.
Decided Oct. 6, 1986.
 
 David Gerald Jay, Buffalo, N.Y., for plaintiffs-appellants.
 Ann Horowitz, Asst. Atty. Gen., State of N.Y. (Robert Abrams, Atty. Gen. of the State of New York, New York City, of counsel), for defendants-appellees.
 Thomas P. Zolezzi, Sp. Counsel, State Bd. of Elections, Albany, N.Y., for defendant-appellee, New York State Bd. of Elections.
 Rutnick & Rutnick, Albany, N.Y. (James E. Banagan, Albany, N.Y., of counsel), for amicus curiae.
 Before MANSFIELD, PIERCE and PRATT, Circuit Judges.
 PER CURIAM:
 
 
 1
 On September 3, 1986, plaintiffs-appellants, who include voters registered in the State of New York and candidates who sought to be placed on the ballot for the New York primary election to be held on September 9, 1986, applied to us pursuant to F.R.A.P. 8(a) for a stay and injunction pending their appeal of an order of the Northern District of New York, Cholakis, J., dated August 29, 1986, dismissing their action, which sought a declaratory judgment and injunction compelling the defendants, members of the New York State Board of Elections, to place those plaintiffs who were candidates on the ballot. In view of the imminency of the election we acted immediately, denying a stay and injunction and noting in our order that this opinion would follow. The action, instituted under 42 U.S.C. Sec. 1983, had been commenced on August 18, 1986, by the filing of a complaint in the Western District of New York. Venue was transferred on August 28, 1986, to the Northern District. On August 30, 1986, plaintiffs filed their notice of appeal from Judge Cholakis' order.
 
 
 2
 On July 19, 1986, plaintiffs Webster Tarpley, Judah Rubinstein, and Fernando Oliver filed a joint designating petition with the New York Board of Elections, seeking to have their names placed on the ballot for the Democratic Party primary. Their petition consists of 25 volumes and contains over 58,000 signatures. Each volume begins with a cover sheet summarizing the contents of the petition. This cover sheet indicates that Webster Tarpley is seeking the office of United States Senator, Judah Rubinstein the office of Governor, and Fernando Oliver the office of Lieutenant Governor of New York. The cover sheet also indicates the number of volumes, pages, and signatures contained in the petition, but fails to indicate whether all or only some portion of these signatures are in support of each of the three individual candidates. Plaintiffs advise us that all signatures were intended to be in support of each of the three candidates.
 
 
 3
 The New York State Board of Elections ("Board") denied the plaintiff-candidates a place on the Democratic primary ballot for failure to comply with New York Election Law Sec. 6-134(2), which the New York Court of Appeals has interpreted as requiring on the cover of joint designating petitions a statement specifying the number of signatures that apply to each candidate and the pages on which they are to be found. See In re Pecoraro v. Mahoney, 65 N.Y.2d 1026, 484 N.E.2d 652, 494 N.Y.S.2d 289 (1985). As a penalty for failure to comply with this requirement, the Board of Elections invalidated all of the signatures. Because each candidate needed only 20,000 valid signatures in order to be placed on the ballot, it is undisputed that if the joint petitions had specified the number of signatures applicable to each candidate, and the pages where they were located, all candidates would have qualified.
 
 
 4
 New York Election Law Sec. 6-134(2) provides in pertinent part that the cover sheet of a designating petition
 
 
 5
 "[S]hall indicate the office for which each designation and nomination is being made, the name and residence address of each candidate, the total number of pages comprising the petition, and the total number of signatures contained in such petition."
 
 
 6
 The plaintiff-candidates challenged the Board's ruling in the New York State Supreme Court, contending that their designating petitions satisfied Sec. 6-134(2) and that that section was in any event unconstitutional. The Board's ruling and the constitutionality of the law were upheld by the state courts upon appeal, which was pursued all the way to the New York Court of Appeals. Matter of Rubinstein v. Board of Elections of the State of New York, --- A.D.2d ---, 506 N.Y.S.2d 121 (3d Dept.1986), permission to appeal denied, 68 N.Y.2d 605, --- N.Y.S.2d ----, 497 N.E.2d 968 (1986). In this action which followed, several voters, who had not been parties to the state court litigation, were joined as plaintiffs with the candidates who had lost in the state courts. Plaintiffs claim that the Board's invalidation of the candidates' petitions pursuant to Sec. 6-134(2) deprives them of rights protected by the First, Fourteenth and Fifteenth Amendments of the United States Constitution. Judge Cholakis dismissed the complaint on the ground that under New York law, which applies, the New York courts' determination that Sec. 6-134(2) was constitutional precluded the issue from being relitigated, Migra v. Warren City School District Board of Education, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). The plaintiffs' contention, that under England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), their reservation in the state court litigation of the right to litigate federal constitutional issues in federal court preserved their right to do so, was rejected on the ground that it applied only in limited circumstances not present here.
 
 DISCUSSION
 
 7
 For the reasons stated by the district court, the plaintiffs who were candidates are precluded by the New York state courts' adjudication of the constitutional issues from relitigating those issues in this action. Under the Supreme Court's decision in Migra, supra, we are obligated to give the state court's decision the same preclusive effect it would receive in New York state courts. The latter would bar the issues from being raised again. See In re Reilly v. Reid, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978).
 
 
 8
 Nor was the plaintiff-candidates' attempt to reserve their federal constitutional claims in the state court proceedings effective to permit relitigation of them here. England, supra, which permitted such a reservation by plaintiffs who had been relegated to the state courts under the abstention doctrine, represents a narrow exception to the doctrine of res judicata, as later developed by the Supreme Court in Migra, and Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and has no application in this case, in which there never was an abstention by a federal court. In Allen, the Court distinguished England, noting that "[a]bstention may serve only to postpone, rather than to abdicate, jurisdiction, since its purpose is to determine whether resolution of the federal question is even necessary, or to obviate the risk of a federal court's erroneous construction of state law." 449 U.S. at 102 n. 17, 101 S.Ct. at 419 n. 17.
 
 
 9
 The claim asserted here by the plaintiff-voters stands on a different footing since they were not parties to the state court proceeding and would not therefore be barred under the doctrines of res judicata or issue preclusion from challenging the constitutionality of Sec. 6-134(2) unless we were to find that their "interests were adequately represented by [the candidates]" and that the candidates were "vested with the authority of representation," Expert Elec., Inc. v. Levine, 554 F.2d 1227, 1233 (2d Cir.1977). This we cannot do. Although the voters do have some community of interest with the candidates, the relationship is not close enough to be viewed as an authorization by the former to the latter to represent the voters in the legal proceedings in the state courts.
 
 
 10
 Turning to the merits, a state's power to engage in "substantial regulation of elections ... if some sort of order, rather than chaos, is to accompany the democratic processes" is recognized. Storer v. Borwn, 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). In general, restrictions that "protect the integrity and reliability of the electoral process" will be upheld if they are reasonable and non-discriminatory. Anderson v. Celebrezze, 460 U.S. 780, 788 n. 9, 103 S.Ct. 1564, 1570 n. 9, 75 L.Ed.2d 547 (1983). However,
 
 
 11
 "Constitutional challenges to specific provisions of a State's election laws therefore cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions. Storer, supra, [415 U.S.] at 730 [94 S.Ct. at 1279]. Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional." Id., 460 U.S. at 789, 103 S.Ct. at 1570.
 
 
 12
 Applying the foregoing standards to the present case, it is beyond dispute that the voters' First Amendment interest, the ability to vote for candidates of their choice, is weighty. On the other hand, the State's justifications for enactment of Sec. 6-134(2) are also of prime importance: protection against fraudulent designating petitions and expedition of the processing of petitions. Absent the threat of a heavy penalty for non-compliance, i.e., invalidation of a joint petition, candidates would have an incentive to combine signatures in support of unpopular candidates with those in support of popular ones and by not disclosing the candidate for whom each petitioner signed, conceal the unpopular candidate's lack of the required number of signatures. The failure of a joint designating petition to state on its cover sheet the number of signatures for each candidate and the pages on which they are to be found can also increase the burden on election officials by forcing them to go through the petition, signature by signature, to verify whether each candidate has the number of signatures entitling him or her to be placed on the ballot, and thus delay and impede efficient processing of petitions.
 
 
 13
 The burden imposed on the candidates by Sec. 6-134(2), on the other hand, is miniscule. It is undisputed that compliance does not present a problem. The requirements of the statute, as interpreted in 1985 by the New York Court of Appeals in Pecoraro v. Mahoney, supra, are clear and free from any vagueness. Pecoraro, moreover, put the candidates on notice of the importance of the cover sheet requirement and the stringency of the penalty for failure to comply. The candidates' lack of fraudulent intent in the present case does not justify an exception from a rule of general application.
 
 
 14
 Our application of the Anderson standards and weighing of the respective interests of the parties satisfies us that Sec. 6-134(2) represents a reasonable regulation within constitutional bounds. We accordingly adhere to our denial of a stay and injunction pending appeal.