COALITION FOR A PROGRESSIVE NEW YORK, Lenora B. Fulani, Pedra Espada and Sandra Love, Plaintiffs,

v.

Rafael Castaneira COLON, David Dinkins, George Friedman, Hector L. Diaz and the Board of Elections in the City of New York, Defendants.

No. 89 Civ. 5811 (RWS).

United States District Court, S.D. New York.

Sept. 5, 1989.

## OPINION

SWEET, District Judge.

Plaintiffs Pedro Espada ("Espada"), Sandra Love ("Love"), Coalition For A Progressive New York (the "Coalition") and Lenora B. Fulani ("Fulani") have commenced an action under 42 U.S.C. §§ 1981, 1983 and 1985 alleging violations of their constitutional rights arising from the invalidation of designating petitions intended to

secure Espada a place on the ballot as candidate for City Council, 11th City Council District, Bronx County, in the Democratic primary to be held on September 12, 1989. Plaintiffs have moved by order to show cause for a preliminary injunction directing defendant New York City Board of Elections to place Espada on the Democratic primary ballot next Tuesday. Several of the defendants have submitted cross-motions to dismiss the complaint. For the reasons set forth below, the complaint is dismissed and plaintiffs' request for a preliminary injunction is denied.

*The Parties*

Espada has been a candidate for the Democratic Party nomination for the office of Member of the City Council of the City of New York for the 11th City Council District in Bronx County. He is also the candidate of the New Alliance Party for that office. His campaign is managed by Love, an enrolled Democrat residing within the 11th City Council District who desires to vote for candidate Espada in the upcoming Democratic Party primary.

The Coalition is an unincorporated political association formed in April of 1989, having as its goal the election of a Black or Latino mayor for New York. Fulani is the leader and organizer of the Coalition.

Defendant Rafael Castaneira Colon ("Colon") is the incumbent City Council Member for the 11th City Council District. He is a candidate for the Democratic Party nomination for that office, as well as the nominee of the Liberal Party for the same office. As described below, Colon also is one of the parties who successfully brought a recently concluded state court action to invalidate his opponent Espada's ballot petitions.

Defendant New York City Board of Elections (the "Board") is the agency entrusted with the responsibility for supervising and administering the nomination and election of candidates for public office in New York City, a responsibility that includes the placement of candidates on the Democratic primary ballot for City Council.

Defendants David Dinkins ("Dinkins"), George Friedman ("Friedman") and Hector L. Diaz ("Diaz") are elected public officials holding, respectively, the offices of Manhattan Borough President, Assemblyman for the 79th Assembly District, Bronx County, and Assemblyman for the 74th Assembly District, Bronx County. Dinkins is also a candidate for Democratic Party nomination for Mayor of New York; Friedman a leader of the Bronx County Organization of the Democratic Party; and Diaz formally served as Commissioner of Elections of the Board of Elections.

*Prior Proceedings*

On or about July 14, 1989, plaintiff Espada submitted designating petitions to the Board in order to qualify for a place on the primary ballot of the Democratic Party. Defendant Colon filed objections to Espada's designating petitions on or about July 17, 1989 in an effort to disqualify Espada. The Board determined that Espada's petitions contained a sufficient number of valid signatures to enable candidate Espada's name to appear on the Democratic Primary ballot.

On or about July 27, 1989, Colon commenced a proceeding in the Supreme Court of the State of New York, County of Bronx, challenging the validation of Espada's designating petitions. Espada commenced a similar proceeding to invalidate Colon's petition. The assigned Justice, the Honorable Lewis R. Friedman, referred the proceeding challenging Espada's petition to a special referee, Brenda Levinson, for the purposes of taking testimony and issuing a report with recommendations. Eleven days of hearing, running from July 31, 1989 to August 12, 1989, were conducted by the referee. On August 16, 1989, the referee issued a report containing her recommendation that Colon's application to invalidate Espada's designating petition should be granted on the ground that Espada's petition was permeated by fraud.

Justice Friedman held oral argument on that recommendation the next day, August 17, 1989, or, as becomes relevant, some five days following the close of the evidentiary hearing conducted by the referee. At argument, in the course of giving reasons

why the referee's conclusions were flawed, counsel for Espada requested for the first time that the evidentiary portion of the proceeding be reopened to permit the court to take further testimony. Counsel claimed that evidence of "clear fraud, subornation of perjury, and subornation of the judicial and democratic process" had been discovered the previous night by two men (at least one of whom was an associate of Espada), who, while paying a midnight visit to a witness who had provided damaging testimony against Espada at the August 12, 1989 hearing, allegedly were advised by the witness that in fact he did not know that it was Espada who had taken down his signature, contrary to his testimony given before the referee. Counsel offered to put on the testimony of the two men. (No offer was made to take further testimony from the alleged recanting witness, although counsel claimed to have a tape recording of portions of the two men's interview.)

Justice Friedman denied the application to reopen. In his written decision issued the following day, in which he adopted the recommendation of the referee, he explained that counsel's motion to reopen the hearing was untimely, coming as it did only after the referee's unfavorable report had been issued. In the separate action concerning Colon's petition, a judgment of validation was issued.

Appeal was taken to the Appellate Division, First Department. Following argument, the panel unanimously affirmed Justice Friedman's judgment invalidating Espada's petition, by order dated August 24, 1989. In the appeal of the Colon matter, however, Justice Friedman's judgment holding Colon's designating petition invalid was reversed. Plaintiffs then commenced this action in federal court, pending determination of plaintiff Espada's application to the Court of Appeals of the State of New York for leave to appeal. That application was denied by the Court of Appeals on August 31, 1989. The Court of Appeals that same day reversed the Appellate Division's determination invalidating Colon's petitions, with the result that at the moment he is on the ballot unopposed.

Argument was heard on briefs and affidavits on September 1, 1989, and the hearing was continued to today's date.

*The Complaint*

Plaintiffs allege a conspiracy involving Friedman, the Democratic Party organization and various elected and appointed officials it assertedly controls to deprive Espada of a position on the ballot and voters in the Democratic Party primary of the opportunity to choose him for City Council. Apart from that general and conclusory allegation, the complaint recites the following acts specifically said to have been taken by one or more of the defendants in support of their efforts to prevent Espada's name from appearing on the ballot.

In the case of defendants Friedman, Dinkins and the Board, the pleaded acts solely concern the circulation by the Coalition of a joint designating petition that contained the name of Dinkins along with that of Espada. For reasons noted in the margin, those acts are not relevant to any alleged violation of the state election law.[1]

---

1. The acts in question consisted of Friedman's expressing displeasure to Dinkins concerning the fact that the Coalition was circulating such a joint designating petition that contained the name of Dinkins; Dinkins' advising plaintiffs that the circulation of that joint petition was unauthorized and must cease; Dinkins' filing with the Board a declination of the joint petitions filed by the Coalition insofar as they purported to have been filed on his behalf; the Board's refusal to include the signatures on the joint petition in the signature total claimed on behalf of *Dinkins* (but not in the signature total claimed on behalf of Espada), a decision over which Dinkins is alleged to have exercised influ-

ence through his official position as Manhattan Borough President.

Defendant Colon, in opposing validation of Espada's petitions in state court, argued that signatures contained in the joint petitions should not be counted toward Espada's total, in view of the alleged failure of the Coalition or Espada's campaign to secure Dinkin's approval to use his name. The referee recommended, and the Supreme Court held, that those signatures could be claimed by Espada because Dinkins' campaign had impliedly consented to the joint petition and did not revoke that implied consent in a timely fashion. Thus, assuming the truth of plaintiffs' allegations as to defendants Friedman, Dinkins and Board, those de-

With respect to defendants Colon and Diaz, plaintiffs plead that Colon, with Diaz' assistance, challenged Espada's designating petition before the Board and in state court and that in the course of those challenges, Colon subpoenaed witnesses and examined petition sheets. In addition to those lawful activities normally associated with ballot petition challenges, plaintiffs contend that Colon (but not Diaz) acted unlawfully by

> "personally secur[ing] the attendance [at the referee's hearing] of two signers who gave false testimony that plaintiff Espada himself solicited their signatures. On information and belief, said false testimony was the result of tampering with these witnesses by defendant Colon."

Complaint, Para. 35. No other unlawful act on the part of any defendant is alleged in the complaint other than participation in the alleged conspiracy.

## Discussion

### A. *Standing*

■ Espada, a candidate for Democratic Party nomination in the race for the 11th District Council seat, and Love, his campaign manager and a registered voter seeking to cast a primary ballot supporting his nomination, both possess the requisite standing to challenge Espada's removal from the primary ballot. The same cannot be said for the Coalition and Fulani. Neither alleges a judicially cognizable injury under the First or Fourteenth Amendment arising from Espada's having been denied a place on the Democratic primary ballot, or from any other pleaded facts.

■ To establish federal jurisdiction, a plaintiff must suffer a demonstrable, particularized injury sufficiently "direct and personal to satisfy the case-or-controversy requirement of Article III." *Warth v. Seldin*, 422 U.S. 490, 514, 95 S.Ct. 2197, 2213, 45 L.Ed.2d 343 (1975). Moreover, prudential rules disfavor standing where a plaintiff states only a "generalized grievance" suffered by a large class of citizens, or

"rest[s] his claim to relief on the legal rights or interests of third parties." *Id.*, 422 U.S. at 499, 95 S.Ct. at 2205.

Plaintiffs Coalition and Fulani fail to satisfy those requirements. The only injury they directly claim to have suffered and for which they seek relief is the failure of the Board to include signatures filed by the Coalition—assertedly on Dinkins' behalf but against his expressed will—within the signature total credited to the Dinkins' designating petition for the office of Mayor. Plaintiffs do not assert any injury to Dinkins' ballot position, or to their right to cast a vote in his support, that has resulted from that Board action, for assuredly there has been none. Rather, the claimed injury appears to be the symbolic slight the Coalition and Fulani have suffered owing to Dinkins' spurning of their efforts to associate his candidacy with their political organization by means of a joint petition drive.

■ While governmental interference with the rights of persons *voluntarily* to associate for the advancement of political beliefs is an injury against which the First and Fourteenth Amendments protect, *see, e.g., Cousins v. Wigoda*, 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975); *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), no judicially cognizable injury arises under those amendments from a candidate's rejection of the associational advances of an unwanted political suitor. Forced political association simply is not a "right" protected under the Constitution and, in consequence, the symbolic slight administered by Dinkins' and the Board's refusal to acknowledge the signatures plaintiffs had gathered in support of Dinkins' nomination is an injury simply too "abstract ... to be considered judicially cognizable." *Fulani v. League of Women Voters Education Fund*, 882 F.2d 621, 624 (2d Cir.1989) (quoting *Allen v. Wright*, 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984)).

---

fendants' actions did not have the effect of depriving Espada of a ballot position and so have

no bearing on the preliminary relief requested.

Were that not so, the injury nevertheless would fail to provide the Coalition or Fulani with the requisite stake in the outcome of the instant preliminary injunction motion, which seeks solely to place Espada's name on the ballot. The failure of the Board to count toward *Dinkins'* ballot drive the signatures contained within the Coalition's petitions bears absolutely no connection to the controversy over Espada's place on the ballot. Clearly this is an injury that will not "be redressed by the requested relief." *Id.*, 882 F.2d at 624 (quoting *Allen*, 468 U.S. at 751, 104 S.Ct. at 3324). In view of the failure of the Coalition and Fulani to allege any other injury or interest that gives them a "direct and personal" stake in that controversy,[2] the action against the defendants is dismissed on grounds of lack of standing insofar as it is maintained by plaintiffs Coalition and Fulani.

### B. *Claim Preclusion*

*Migra v. Warren City*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984), requires a federal court to give to a state court judgment "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Under New York's doctrine of *res judicata*, a plaintiff is precluded from raising in a subsequent action any claim that he could have raised in a previous action. *Smith v. Russell Sage College*, 54 N.Y.2d 185, 192, 445 N.Y.S.2d 68, 429 N.E.2d 746 (1981); *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981); *In re Reilly v. Reid*, 45 N.Y.2d 24, 29, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978). So long as the "same gravamen of the wrong" is at issue, the prior judgment is conclusive upon the parties, regardless of whether the subsequent action involves some variation in the facts alleged, *Reid*, 45 N.Y.2d at 29, 407 N.Y.S.2d 645, 379 N.E.2d 172, or proceeds on legal theories which might have been litigated in the earlier action but were not. Preclusion can be avoided only if the party seeking access to federal court demonstrates it was denied a "full and fair opportunity to litigate" the claims in question in the prior proceeding. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 480–81 & n. 22, 102 S.Ct. 1883, 1897 & n. 22, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

Applying these principles, the Court of Appeals has held that a judgment rendered against a candidate by a New York state court under the New York Election Law ordinarily will bar that party from bringing a subsequent civil rights action in federal court, even if the constitutional claims asserted in federal court were not raised in the state court proceeding. *Golkin v. Abrams*, 803 F.2d 55 (2d Cir.1986) (reversing on *res judicata* grounds district court's preliminary injunction order directing Board to place candidate's name on September 1986 primary ballot). These same principles bar Espada from now coming to federal court to assert constitutional claims he could have litigated in the proceedings just concluded in the New York state courts.

■ As described at length above, Espada already has been party to extensive proceedings in the state courts of New York concerning his position on the Democratic Party primary ballot. The "same gravamen of wrong"—denial of a place on

---

**2.** Reading the complaint charitably, as it must be, *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206, the Coalition and Fulani may be said to allege that they have a sufficient interest in the controversy in question by virtue of their having announced political support for plaintiff Espada's effort to secure the Democratic Party nomination for the 11th District council seat. Absent any allegation that the Coalition consists of persons in favor of Espada who are entitled to vote in the 11th District Democratic Party's primary or that Fulani is registered as a Democrat to vote in that district, their concern over Espada's omission from the ballot is more in the nature of a "generalized grievance" or "attempt to raise the putative rights of third parties," *Warth*, 422 U.S. at 499, 514, 95 S.Ct. at 2205, 2213, than it is a "specific and perceptible harm" from which the Coalition or Fulani personally has suffered. See *Ad Hoc Committee of Concerned Teachers v. Greenburgh #11 Union Free School District*, 873 F.2d 25, 29 (2d Cir.1989) (quoting *Evans v. Lynn*, 537 F.2d 571, 591 (2d Cir.1976) (en banc), *cert. denied*, 429 U.S. 1066, 97 S.Ct. 797, 50 L.Ed.2d 784 (1977)).

that ballot—is presented here, albeit dressed up in constitutional clothing. Thus, under *Golkin*, Espada's action is precluded unless he has demonstrated that he was denied a "full and fair opportunity" to press his constitutional claims in those state proceedings. *Golkin*, 803 F.2d at 57. Espada has failed to do so.

Espada does not allege that he strove to bring his First and Fourteenth Amendment conspiracy claims to the attention of the state courts, but was denied the opportunity to present them there. His complaint might be read to suggest, however, that unfairness or inadequacy in the procedures followed in state court obviates that requirement and warrants determination of his federal claims here. *See Montana v. United States*, 440 U.S. 147, 163–64 & n. 11, 99 S.Ct. 970, 978–79 & n. 11, 59 L.Ed.2d 210 (1979).

So much can be gleaned from the complaint's general allegation that the Democratic Party organization led by defendant Friedman controls the electoral processes in New York City in part "through the members and employees of ... the judiciary (including law assistants acting as Special Referees in [e]lection matters), who in most cases obtain their positions through the Democratic Party organization." In an attempt to make that rather broad claim relevant to the specific petition challenge proceeding brought against him, Espada, by affidavit, states that the Special Referee charged by Justice Friedman with overseeing the petition hearings owed her job to defendant Friedman and that the Spanish language translator used at those hearings was the daughter of a former Democratic Party district leader who was defeated in the primary election two years ago by Espada's campaign manager. In addition, plaintiffs' counsel asserted at hearing (although it was not pleaded) that Espada was denied a full and fair opportunity to press his claims in state court because Justice Friedman denied counsel's oral application to reopen evidentiary proceedings to permit testimony intended to demonstrate witness tampering on the part of defendant Colon.

Those specific statements, if true, may suggest the wisdom of taking precautions to avoid even the appearance of any impropriety. However, bearing in mind "that no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause," *Kremer*, 456 U.S. at 483, 102 S.Ct. at 1898, they do not establish an adequate basis for Espada's suspicions that the judicial procedures employed by the state in this case were unfair or inadequate.

First, although he implies general bias on the part of the referee in conducting the evidentiary hearing, Espada here points only to her decision to hear testimony that was translated from Spanish by a Board employee whom plaintiffs also suggest possessed bias. Counsel for plaintiff do not indicate that they challenged that specific decision of the referee, or alleged referee bias, in proceedings before Justice Friedman (or on further appeal), nor do they allege that they were procedurally foreclosed from making any such challenges. Thus, even assuming that there is some evidence that could support impartiality,[3] Espada's apparent failure to avail himself of state procedures that might have resolved the question of referee bias bars him now from relying on that alleged bias as evidence of the inadequacy of state procedures. *See Kremer*, 456 U.S. at 485, 102 S.Ct. at 1899; *Phillips v. Board of Elections of New York*, No. 88–2495, 1988 WL 95396 (E.D.N.Y. August 25, 1988).

Equally defective is the claim that Justice Friedman's decision not to reopen the evidentiary proceeding deprived Espada of a full and fair opportunity to litigate his case. A review of those portions of the evidentiary hearing transcript deemed relevant by Espada's counsel, the referee's re-

---

**3.** It should be noted that defendant Friedman appears to have denied that the referee in question owes her job to him. His affidavit states that none of the present and active Supreme Court law assistants in Bronx County were hired upon his recommendation and further that, with a single exception not relevant here, none of the law assistants serving as special referees in the recent election law cases in Bronx County ordinarily work in Bronx County.

port, and the transcript of the oral argument before Justice Friedman and his ruling establishes that Justice Friedman's determination, which was unanimously upheld by the Appellate Division panel, did not constitute a denial of due process.[4] Whether or not another court might have been inclined to reopen the evidentiary proceeding under such circumstances is irrelevant. So long as the minimum process due Espada under the Constitution was accorded to him, and it was, the decision reached here by the New York state courts is due full faith and credit. *See Kremer*, 456 U.S. at 481–83, 102 S.Ct. at 1897–99.

No other specific facts or circumstances are identified by Espada as having deprived him of a fair hearing in state court. The court in particular notes that no specific allegation of bias or prejudice in these proceedings is lodged by Espada against Justice Friedman or the members of the Appellate Division panel who considered his appeal, and it bears emphasizing that no evidence has been presented that would support such a serious accusation.[5] What Espada has presented, rather, are general allegations of a machine-controlled electoral process in Bronx County. Absent specific facts establishing their relevance to his own invalidation proceeding, those broad allegations fail to supply a sufficient basis for Espada's suspicions that he was denied by the New York state courts the process due him under the Fourteenth Amendment. Accordingly, his claims are dismissed as *res judicata* under *Migra* and *Golkin*, much as they would be were they now asserted in state court.

### C. Collateral Estoppel

■ Espada's campaign manager, Love, is also barred from bringing this action under the related doctrine of collateral es-

4. Eleven days of evidentiary testimony were conducted by the referee. Espada's counsel were permitted to cross-examine witnesses called in opposition to his petition, "the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Cross-examination included the two witnesses whom plaintiff's counsel assert testified falsely. Although the cross-examination did not so reveal, at the evidentiary hearing, counsel made accusations that the testimony of these witnesses was "entirely fraudulent" and that the witnesses had been brought to the hearing by Colon and one of his associates to perpetrate a fraud on the court. Counsel was then permitted to examine as a hostile witness the Colon associate so accused. The record does not indicate that counsel ever sought to examine the accused defendant, Colon, and counsel have not suggested that any such opportunity was denied in state court, either prior to or after the close of the evidentiary hearing.

At the conclusion of the evidentiary hearing, on Saturday, August 12, counsel for plaintiff, notwithstanding having already labeled the testimony of two witnesses fraudulent without introducing supporting evidence, apparently did not move to keep the proceeding open to permit the calling of any witnesses who might rebut that testimony. No application to reopen was made until five days later, the day *after* the referee had issued her unfavorable report and recommendations. That application was predicated on an offer to introduce the hearsay testimony of two persons, one of whom was the husband of Espada's campaign manager, concerning a conversation they had with one of the two witnesses during a midnight visit to the witness' house on the evening following the issuance of the referee's report. The application was denied as untimely, for the reasons stated in Justice Friedman's opinion:

> The reopening was to permit proof to show that ... two witnesses should be disbelieved.... If counsel wished to reopen before the Referee's report was filed, they should have so indicated to the court. This proceeding had continued long enough to allow preparation. The factors urged on the court to disaffirm the testimony of those witnesses is not persuasive.

5. In this respect plaintiffs' counsels' reliance on *Weiss v. Feigenbaum,* 558 F.Supp. 265 (E.D.N.Y. 1982) (Sifton, J.), is misplaced. In *Weiss,* which was not before the federal court on a motion for preliminary injunction, the original Supreme Court Justice assigned to the validation proceedings was discovered to have signed the nominating petition of one of the candidates who was a party to the proceeding, yet the Justice did not recuse himself until after that discovery—and several transparently prejudicial procedural decisions—had been made. *Id.,* 558 F.Supp. at 270–71. The instant case does not present anything resembling the pattern of gross bias that appeared to pervade the state court proceedings in question in *Weiss.* On the pleaded facts, it looks much more like Judge Sifton's recent case, *Phillips v. Board of Elections of New York, supra,* in which a disappointed candidate's unsupported suspicions of referee partiality and abuse of the hearing process were held inadequate to establish denial of due process.

toppel. Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on different causes of action. *See Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The doctrine primarily has application to parties who were involved in a prior litigation, serving, as does *res judicata,* to "protect[ ] adversaries from the expense and vexation attending multiple lawsuits, conserve[ ] judicial resources, and foster[ ] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). Those same interests may be served by preclusion when nonparties close to the prior litigation seek to redetermine issues previously resolved. "Preclusion of such nonparties falls under the rubric of collateral estoppel rather than res judicata...." *Id.*

This case presents the question whether Love, although a nonparty to the invalidation proceeding, stands in a close enough relation to Espada to warrant preclusion of her action. A similar question arose in a companion case to *Golkin,* in which the Second Circuit affirmed the dismissal of a plaintiff-candidate's claims as *res judicata,* but held that the other plaintiffs, who were voters, were not precluded from bringing their action because they had not been parties to the prior state court proceeding. *Tarpley v. Salerno,* 803 F.2d 57, 60 (2d Cir.1986).

Love is a registered voter, and so might seem to evade preclusion under the *Tarpley* holding. That holding, however, was premised upon the Court of Appeal's conclusion that on the record before it the voters' interests could not be said to be "adequately represented by the candidates," nor was the relationship between the voters and candidates so close that the candidates could be deemed to be "vested with authority of representation." *Id.* (quoting *Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1233 (2d Cir.1977). Love, in contrast, does appear to have a relationship with candidate Espada of a sufficiently close nexus, and an interest that is suffi-

ciently identical to his, to preclude her presence in this action. While she is a voter, she is, as well, Espada's campaign manager. In view of her intimate role in the campaign, she can be assumed to have had full knowledge of the prior state invalidation proceeding brought against Espada. Here, if not in *Tarpley,* the relationship between nonparty and party is "close enough to be viewed as an authorization by the former to the latter to represent [her] ... in the state courts." *Tarpley,* 803 F.2d at 60.

It should be added that a holding to the contrary would undermine the salubrious ends the doctrine of collateral estoppel serves, without contributing to any due process goal. While it cannot honestly be maintained by campaign manager Love that her interests have been unfairly deprived of representation, certain of the defendants genuinely argue that allowing this action to proceed would require their costly participation in a proceeding dedicated to relitigating issues that already have been conclusively determined after exhaustive proceedings in another forum. Of equal concern is the redundant expenditure of judicial resources that would be required were Love permitted to proceed.

For all of the above reasons, Love is barred under the doctrine of collateral estoppel from going forward with this action, predicated as it is on relitigation of the conclusively determined issue of whether Espada was wrongly denied a place on the Democratic Primary ballot.

*Conclusion*

On the facts and conclusions set forth above, defendants' motion to dismiss is granted and the complaint is dismissed. For that reason, the preliminary injunction is also denied. Judgment will be entered for the defendants without costs.

It is so ordered.