Emanuel **FRIED** and James Garry, as Trustees of the ERM Health and Group Insurance Fund, Plaintiffs,

v.

**BREVEL MOTORS, INC.**, Subsidiary of Vernitron Corporation, Defendant.

No. 86 CV 2533.

United States District Court, E.D. New York.

Aug. 3, 1987.

Lewis, Greenwall, Kennedy & Lewis, P.C. by Everette E. Lewis, New York City, for plaintiffs.

Cooper Cohen Singer Ecker & Shainswit by David Cohen & Craig Eaton, New York City, for defendant.

### MEMORANDUM & ORDER

KORMAN, District Judge.

Plaintiffs in this case are trustees of the ERM Health and Group Insurance Fund (the "ERM Trustees"). They bring this action against defendant Brevel Motors, Inc. ("Brevel") to recover contributions which Brevel allegedly owes to the ERM Health and Group Insurance Fund (the "ERM Fund") under the provisions of a collective bargaining agreement between Brevel and Local 431 of the International Union of Electrical, Radio & Machine Workers ("Local 431").

Brevel has moved for summary judgment on the ground of res judicata. Brevel asserts that an arbitration award in its favor, which was confirmed in a judgment entered in the District Court for the District of New Jersey, resolved the issue whether Brevel is required to make the payment which the ERM Trustees seek here. Although the arbitration proceedings involved only Brevel and Local 431, Brevel argues that, as a matter of law, the ERM Trustees and Local 431 were in privity with each other. The ERM Trustees are, therefore, precluded from relitigating the same cause of action, even though the ERM Trustees were not parties to the arbitration.

While there is no merit to Brevel's claim that the ERM Trustees and Local 431 were in privity with each other as a matter of law, the undisputed facts show that the ERM Trustees vested Local 431 with authority to represent ERM Fund's interest in the arbitration and that Local 431 conducted the arbitration subject to the control of the ERM Trustees. Brevel is, therefore, entitled to summary judgment based on the defense of res judicata.

### Discussion

(1)

The ERM Fund, of which plaintiffs are trustees, was created to benefit the members of Local 431. The contributions to the ERM Fund, however, come from the employers who have an interest in its financial integrity. The separate interest of the employers is reflected by the fact that one of the ERM Fund's trustees represents the employers. Moreover, the separate interest of the ERM Fund is also reflected by the Trust Agreement, which is incorporated and made a part of the collective bargaining agreement between Local 431 and defendant. The Trust Agreement gives the ERM Fund an independent right to enforce the provisions of the collective bargaining agreement compelling defendant to make contributions to the ERM Fund. Thus, while Local 431 may have represented the employee beneficiaries of the ERM Fund, it was clearly not the legal representative of either the employers or the ERM Fund.

The foregoing compels the conclusion that the relationship between the ERM Trustees and Local 431, standing alone, is insufficient to justify application of the doctrine of res judicata. *O'Hare v. General Marine Transport Corp.*, 740 F.2d 160, 167 (2d Cir.1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985). This conclusion does not, however, end the inquiry. While the Trustees, plaintiffs in this suit, may not "be considered privies to Local [431] as a matter of law by virtue of the divergent responsibilities of pension or

insurance fund trustees and union officials," the question remains whether the evidence establishes "an agency relation" between Local 431 and the ERM Fund sufficient to justify the defense of res judicata. *O'Hare, supra,* 740 F.2d at 167.

(2)

"Generally speaking, one whose interests were adequately represented by another vested with authority of representation is bound by the judgment, although not formally a party to the litigation." *Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1233 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). The factors which are relevant to this determination include the exercise of control by the non-party over the conduct of the litigation of the prior proceeding, *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), an identity of interest between the non-party and the litigating party with respect to a cause of action, *Kreager v. General Electric Co.,* 497 F.2d 468, 472 (2d Cir.), *cert. denied,* 419 U.S. 861, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974), and the willingness of the non-party to allow its common interest to be represented. *Ellentuck v. Klein,* 570 F.2d 414, 425–26 (2d Cir.1978).

The undisputed facts here conclusively establish (1) a commonality of interest, (2) an obvious willingness on the part of the ERM Trustees to allow its common interest to be represented by Local 431 in the arbitration, and (3) the exercise of control by the ERM Trustees over the conduct of the arbitration.

Specifically, Local 431 initiated the arbitration for the very purpose of compelling the defendant to pay monies which were allegedly due and owing to the ERM Fund. While there may be circumstances under which Local 431 and the ERM Fund have adverse interests, here their common interest was to force Brevel to pay certain contributions to the ERM Fund. This commonality of interest is further evidenced by the fact that the ERM Fund's administrator testified as the only witness for Local 431 at the arbitration hearing.

Moreover, the record is undisputed that the ERM Fund expressly agreed to the use of the arbitration procedure by Local 431 (Stein Dep.Tr. 25, 37) and that it did so for strategic reasons. The affidavit of Basil Pollit, plaintiffs' attorney at the time of the arbitration, states that he "advised the ERM Trustees that it was the obligation of Local 431 to see that the contributing employers made timely and proper payments to ERM and that it would not be a prudent use of ERM funds to undertake this obligation" (Pollit Aff. ¶ 7). Mr. Pollit states that he was "assured by counsel for Local 431 that Brevel could be expeditiously compelled through arbitration to pay the increase" (*id.*). Significantly, Mr. Pollit's affidavit was submitted by plaintiffs to explain why they agreed to allow Local 431 to arbitrate the dispute with Brevel.

The ERM Trustees also exercised substantial control over the conduct of the arbitration because of their power to cut off benefits to Brevel's employees as a result of the failure of Brevel to make the disputed contributions. The desire of Local 431 to have those benefits continued during the arbitration—to which the ERM Trustees acceded—gave the ERM Trustees practical control over the arbitration proceeding. The manner in which this control was exercised was expressly noted by the arbitrator in his decision (Winnig Affidavit, Ex. A, at p. 18). There he referred to a letter from Everett Lewis, the attorney who represented Local 431 at the arbitration, advising that the arbitration could not be settled because the ERM Trustees "unanimously voted to reject the proposed settlement." [1] The letter reads as follows:

This is to inform you that the ERM trustees unanimously voted to reject the proposed settlement.

The trustees are firmly convinced that the method for determining the contribution rate increases which they and their predecessors have employed for more than 30 years and which have heretofore been universally accepted by all contributing employers should be sustained by

---

1. Mr. Lewis represents the Trustees in the present action.

you as arbitrator. Thus they would flatly oppose settlement of this case even on a nuisance value basis.

Please schedule this matter for what both sides hope will be the last day of hearings.

The fact that the Trustees were in a position to accept or reject settlement of the matter makes it clear that they exercised practical control over the conduct of the arbitration. Under these circumstances, it is not only fair to preclude the relitigation of the matter, it would be unfair to permit it.[2]

While the ERM Trustees' claim that they did not intend to be bound by an adverse decision by the arbitrator and that they made known their intention at the time, this does not alter the compelling conclusion that Local 431 was representing the ERM Fund's interest with the full knowledge and consent of the Trustees. "Parties are not permitted to participate in arbitration on the merits and yet maintain a right to litigate the issues". *Roggio v. Nationwide Mutual Insurance Co.*, 66 N.Y.2d 260, 263, 496 N.Y.S.2d 404, 487 N.E.2d 261 (1985).

### (3)

Plaintiffs' remaining arguments are likewise without merit. Relying on *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), plaintiffs argue that, because Brevel's obligation under the collective bargaining agreement to make the contributions has been codified pursuant to 29 U.S.C. § 1145, they have an independent right to a judicial resolution of their claim of which they cannot be deprived by their participation in an arbitration proceeding.

This case is plainly distinguishable from *Barrentine*. In *Barrentine* the Supreme Court observed that "[w]hile courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individuals." 450 U.S. at 738, 101 S.Ct. at 1443.

In the present case the arbitral decision resolves rights arising out of the collective bargaining agreement. Section 1145 simply mandates compliance by the employer with an obligation undertaken pursuant to a collective bargaining agreement. The employer's obligation here to contribute was based solely on the collective bargaining agreement and could be bargained away by Local 431 at its expiration. Under these circumstances, there is no reason why section 1145 should be deemed to preclude the defense of res judicata here. *Barrantine supra*, 450 U.S. at 741 n. 19, 101 S.Ct. at 1445 n. 19.[3]

Plaintiffs also argue that "the question to be determined by the Court in this action and the standard of proof to be applied are entirely different than those before [the] Arbitrator...." (Plaintiffs' Memo. of Law at p. 19). Specifically, plaintiffs argue that, while the arbitrator was limited to deciding whether the terms of the collective bargaining agreement between Local 431 and Brevel had been violated by Brevel, here the issue is whether "the Trustees exceeded their powers in establishing the

---

2. *Trustees of Local 478 Trucking & Allied Industries Pension Fund v. Siemens Corp.*, 721 F.2d 451 (3rd Cir.1983), is distinguishable from this case for a number of reasons. Of particular significance is the fact that the Court of Appeals left open the issue "whether the union may, at the request of the Trustees, take the Trustees claim to arbitration." 721 F.2d at 457.

3. This case does not involve the issue of the validity of a provision in a trust or collective bargaining agreement which requires the trustees "to rely on the union to arbitrate disputes with the employer" or which binds the Trustees to the outcome of an arbitration between the union and the employer. *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 376 and n. 23, 104 S.Ct. 1844, 1851 and n. 23, 80 L.Ed.2d 366 (1984). The issue here is whether, once a dispute arose and the Trustees agreed to have it submitted to arbitration, the Trustees may relitigate an adverse decision which was judicially confirmed without objection. There are no reasons of policy why the ERM Trustees should be deprived of the discretion to permit Local 431 to represent its common interest under the circumstances discussed above. Consequently, Brevel should not be denied the defense of res judicata.

**32**

1983 contribution rate increase, and the standard of proof is 'arbitrary and capricious'" (*id.*). This argument is without substance for a number of reasons.

Local 431 expressly made the same argument to the arbitrator that plaintiffs now claim they wish to make here. Specifically, although Article 27(b) of the collective bargaining agreement fixes the circumstances under which rates may be upwardly adjusted, the Trustees argue that they are empowered by the Trust Agreement to increase the employers' rate of contribution without regard to any limitations contained in Article 27(b) (Complaint ¶¶ 21, 22; Plaintiffs' Memo. of Law, p. 22). Moreover, they claim that the formula they employed in upwardly adjusting the rates here at issue was acquiesced in by Brevel and the other employers over the years (Plaintiffs' Memo. of Law, p. 25).

The argument regarding the right to the Trustees to upwardly adjust rates without regard to any limitations in Article 27(b) of the collective bargaining agreement was— as plaintiffs concede here—made "plain to Arbitrator Aiges" (Plaintiffs' Memo. of Law p. 22).[4] So, too, was the argument that the acquiescence of the employers confirmed the Trustees claim that their method of calculating rate increases was sanctioned by Article 27(b) of the collective bargaining agreement.[5]

This consideration aside, however the ERM Trustees choose to characterize the theory underlying their claim, the ultimate issue in the arbitration and this litigation is the same: Whether Brevel was legally obligated to make the contributions at the rate set by the Trustees. This obligation concededly derives from the collective bargaining agreement. Of course, even if the present action by the Trustees presents an alternative theory for obtaining the same relief sought in the arbitration, the defense of res judicata precludes litigation of claims that *could* have been—but were not—raised in the earlier proceeding. *Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp.*, 550 F.2d 1320, 1323 (2d Cir.1977).

Moreover, *if* the arbitrator applied a different or erroneous standard of proof, it was a foreseeable consequence of plaintiffs' decision to permit Local 431 to represent its interest in arbitration—a procedure in which "parties seek the resolution of differences which have arisen between them in concrete factual settings free from the requirements and expectations familiar to judicial proceedings" and in which "[s]ubmissions are for determinations based on *ad hoc* applications of broad principles of justice and fairness in the particular instance." *SCM Corp. v. Fisher Park Lane Co.*, 40 N.Y.2d 788, 793, 390 N.Y.S.2d 398, 358 N.E.2d 1024 (1976); *In re Marcey Lee Manufacturing Co. [Cortley Fabrics Co.]*, 354 F.2d 42, 43 (2d Cir.1965).[6] "[S]o far as the arbitrator's decision concerns construction of the contract," which is the case here, "the courts have no business

**4.** Specifically, after making reference to their "well established process" of fixing rates of contribution, plaintiffs say:

> In applying this process, the Trustees have never referred to the terms of Local 431's collective bargaining agreements with the various contributing employers. The Trustees have no input in such agreements, are not bound thereby, *and made this plain to Arbitrator Aiges* (Plaintiffs' Memo. of Law p. 22, emphasis supplied).

**5.** In the memorandum submitted in the arbitration proceeding Local 431 argued:

> "For 20 years or more adjustments in the employer contribution rate were periodically effected by the purported application of 27(b) standards without employer complaint. Since there were no less than 29 contributing employers ... the language should be read as

confirming an uninterrupted practice by the ERM Trustees" (Memo. of Law, p. 10–11, Hirsch Aff., Ex. C).

**6.** The Trustees are specifically authorized by the Trust to "[c]ompromise, arbitrate, settle, adjust or release any suit or legal proceeding, claim, debt, damage or undertaking due or owing from or to the Fund ..." (Trust Agreement, Art. V, sub. (4)(j), Fried Aff. Ex. C). A cursory review of plaintiffs' claims on the merits confirms their obvious belief that an arbitration was more likely to result in an expeditious and favorable ruling than a judicial proceeding. Unfortunately for the Trustees, instead of a determination based on "broad principles of fairness and justice," they obtained a careful, thoughtful and well-reasoned decision worthy of a judge. This does not provide a basis for allowing plaintiffs to relitigate their claim.

overruling him because their interpretation of the contract is different from his." *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). They likewise have "no business" denying res judicata effect to such a decision.

*Conclusion*

Accordingly, for the foregoing reasons defendant's motion for summary judgment is granted. Because the record does not support the suggestion that the complaint was filed maliciously or that it was frivolous, defendant's motion for attorneys' fees pursuant to F.R.Civ.P., Rule 11, is denied.

SO ORDERED.