**Joseph CARINO, Sr., and Sylvia Carino and Joseph A. Carino, Plaintiffs,**

v.

**TOWN OF DEERFIELD (ONEIDA COUNTY, NEW YORK) and Harron Cable Television, Defendants.**

No. 88–CV–1309.

United States District Court, N.D. New York.

Nov. 23, 1990.

Hugh Samuel Silberstein, Rochester, N.Y., and Pozefsky Pozefsky & Bramely (Anthony Murphy, of counsel), Albany, N.Y., for plaintiffs.

Abelove Siegel Hester & Stephens (Michael H. Stephens, of counsel), Utica, N.Y., for Harron Cable Television.

Rossi Kehoe Murnane & Hughes (Thomas P. Hughes, of counsel), Utica, N.Y., for Town of Deerfield.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### Introduction

The plaintiffs have brought this action to challenge the validity of a Town of Deerfield ("Deerfield") zoning ordinance prohibiting the erection of dish-type and tower-type antennae on housing lots which are less than one-half acre in size. Although the complaint is somewhat inartfully drafted, it appears to the court that plaintiffs, Joseph Carino, Sr., Sylvia Carino and Joseph A. Carino ("Carino"),[1] are raising various claims pursuant to 42 U.S.C. §§ 1983

---

1. Unless indicated to the contrary, all references herein to Carino are to Joseph A. Carino. Joseph A. Carino is the son of Joseph Carino, Sr. and Sylvia Carino. Title to the property in question is held by the parents.

and 1985. Basically, plaintiffs' § 1983–based claims allege that the zoning ordinance deprives them of equal protection and due process of law; and that it deprives them of an alleged first amendment right of access to information. Plaintiffs further contend that defendants, the Town of Deerfield ("Deerfield") and Harron Cable Television ("Harron Cable"), have engaged in a conspiracy to deprive them of the above mentioned rights in violation of 42 U.S.C. § 1985. Plaintiffs also contend that the Deerfield zoning ordinance is preempted by a federal regulation issued by the Federal Communications Commission ("FCC").

The plaintiffs are now moving for partial judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), and for partial summary judgment pursuant to Fed.R.Civ.P. 56. Defendants state that they are moving, "[f]or an Order granting summary judgment dismissing the Complaint on the ground of *res judicata* and on the ground that the Complaint does not state a claim upon which relief can be granted." Defendants' Notice of Cross–Motion at 1. The court notes in passing that from a procedural standpoint, none of the parties properly framed their notices of motions. Plaintiffs' notice of motion is inconsistent in that it seeks relief under both Rule 12(c) and Rule 56. Defendants' notice of motion is also inconsistent in that it seeks relief under both Rule 12(b)(6) and Rule 56.

■■■ The parties are advised to be more careful when drafting future notices of motion. There *is* a difference, of which lawyers practicing before this court should be fully aware, between a motion made pursuant to Rule 12(b)(6) or 12(c) and one made pursuant to Rule 56. Plaintiffs and defendants are asking this court to make determinations based solely on the pleadings *and* to consider matters outside the scope of the pleadings. Inherent in a Rule 12(b)(6) or 12(c) motion is the fact that a court may not consider matters outside the pleadings. Indeed, when a court does consider matters outside the scope of the pleadings, according to those Rules, the court must treat such motion as one for summary judgment pursuant to Rule 56. Thus, because the parties asked the court to consider matters outside the pleadings, the court, as it must, has converted these motions to summary judgment motions and the parties were so advised. In particular, the court has treated plaintiffs' motion as one for partial summary judgment on the issue of liability;[2] similarly, it has treated defendants' cross-motion as one for summary judgment.

*Background*

A Deerfield zoning ordinance prohibits, in certain residential districts, the erection of dish-type and tower-type antennae on any lot less than one-half acre in size. The zoning ordinance states in relevant part:

Section 17—Accessory Buildings, Dish and Tower Type Antennae; Solar Energy System; Wind Energy Conversion Systems

B. Dish or Tower Type Antennae:

General Regulations:

1. In R–1 or R–2 District *no dish or tower type antennae shall be erected on any lot less than one half (½) acre.*[3] . . . .

Definitions:

ANTENNAE, DISH: Consists of three main components—the antennae itself, often called a dish; a low-noise amplifier (LNA) and a receiver. The antennae and LNA are generally located outdoors and are connected by coaxial cable to the receiver, which is usually placed indoors.

ANTENNAE, TOWER TYPE: A structure weighing more than one hundred (100) pounds utilized to transmit and/or receive electromagnetic waves (i.e. radio, television, short wave signals).

*See* Plaintiffs' Ex. A. It is undisputed that Mr. and Mrs. Carino's property is less than

---

**2.** By this motion plaintiffs are seeking judgment solely on the issue of liability; they intend to reserve for trial the damages issue.

**3.** It is unclear from the pleadings whether the plaintiffs' home is in an R–1 or R–2 district.

one-half acre in size. *See* Complaint at ¶ 20. Despite that fact, Joseph A. Carino purchased and installed a satellite receive-only antenna dish on that property. In February, 1987, Carino was issued an appearance ticket for violating § 17(B)(1) of the zoning ordinance. Carino was subsequently found guilty of the violation and fined $100.00.

After receiving the appearance ticket, but prior to his conviction, Carino applied for a building permit for the system. The Deerfield Building Inspector, Robert Kozlowski, denied that application. According to Mr. Kozlowski, the property on which the system was located was not one-half acre or larger, as required by § 17(B)(1) of the zoning ordinance. *See* Affidavit of Joseph A. Carino (January 19, 1989), Ex. A ("Record")[4] at 28 (Variance Application Transcript).

Carino next filed an application for a variance on his parents' property with the Deerfield Zoning Board of Appeals ("Zoning Board"). The Zoning Board held hearings on the variance application on March 18, and April 6, 1987. After an extensive review of the circumstances, the Zoning Board determined that Carino failed to obtain a building permit prior to installing his system as required by § 17(B)(3)[5] of the zoning ordinance. Record at 62. The Zoning Board also found that no hardship was placed on Carino through the enforcement of the ordinance. *Id.* at 44. The Zoning Board refused to address Carino's contention that the ordinance was preempted by the FCC regulation codified at 47 C.F.R. § 25.104.[6] *Id.* at 57. For those reasons, the Zoning Board denied Carino's application for a variance.

Carino next commenced an Article 78 proceeding[7] in New York State Supreme Court to challenge the Zoning Board's decision. Named as respondents in that proceeding were the Zoning Board and the individual members of that Board. The Town of Deerfield, a defendant herein, was *not* named as a respondent.

The state supreme court found without merit Carino's contention that the Zoning Board's decision was arbitrary and not supported by substantial evidence. *Id.* at 6. The state court next found that Carino's claim that the zoning ordinance violated his equal protection rights was specious. *Id.* Finally, the court determined that there was no basis for Carino's preemption claim. *Id.* at 7. The state court therefore denied Carino's petition in its entirety. *Id.*

Carino then appealed that decision to the New York State Appellate Division, Fourth Department. The Appellate Division unanimously affirmed the lower court decision "[f]or the reasons set forth in the memorandum at Special Term...." *Carino v. Pilon*, 142 A.D.2d 996, 530 N.Y.S.2d 1022 (4th Dep't 1988). The Appellate Division observed, "[w]e add only that an article 78 proceeding is not the proper proceeding in which to challenge the constitutionality of a zoning ordinance." *Id.* Subsequently,

---

**4.** Exhibit A consists of the entire record on appeal to the Appellate Division, Fourth Department.

**5.** Section 17(B)(3) of the zoning ordinance provides:

No dish or tower type antennae shall be erected on any lot without the issuance of a building permit by the enforcement officer(s) and subject to the following so as to be cosmetically acceptable for all adjoining landowners:....

Record at 20.

**6.** 47 C.F.R. § 25.104 states:

State and local zoning or other regulations that differentiate between satellite receive-only antennas and other types of antenna facilities are preempted unless such restrictions:

(a) Have a reasonable and clearly defined health, safety or aesthetic objective; and
(b) Do not operate to impose unreasonable limitations on, or prevent, reception of satellite delivered signals by receive-only antennas or to impose costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment.
Regulation of satellite transmitting antennas is preempted in the same manner except that state and local health and safety regulation is not preempted.

47 C.F.R. § 25.104 (1989).

**7.** In New York, an Article 78 proceeding is the primary device available for challenging or reviewing administrative action in court. D. Siegel, New York Practice (1978).

on its own motion, the New York Court of Appeals dismissed Carino's appeal taken as of right because no "[s]ubstantial constitutional question [was] directly involved." *Carino v. Pilon*, 72 N.Y.2d 1038, 534 N.Y. S.2d 935, 531 N.E.2d 655 (1988). It also denied Carino's motion for leave to appeal.[8] *Id.*

## I. RES JUDICATA

■ Defendants first assert that the doctrine of *res judicata* bars plaintiffs from relitigating the issues raised in this action based upon a prior state court judgment.[9] "A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 61, (1984). Thus, the law of New York controls the preclusionary effect of the prior decisions in this action. *See Application of American Tobacco Co.*, 880 F.2d 1520, 1526 (2d Cir.1989).

■ New York has adopted the "transactional analysis" approach in deciding *res judicata* issues...." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 688, 429 N.E.2d 1158, 688–89 (Ct.App. 1981) (citation omitted); *American Tobacco*, 880 F.2d at 1526–27. The New York Court of Appeals has explained, "Under this address, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon dif-

ferent theories or if seeking a different remedy." *Id.* (citation omitted). This bar against later claims based upon the same cause of action is subject to certain limitations. One limitation, which is of particular significance for purposes of this motion, is that *res judicata* will not be applied if the initial forum did not have the power to award the full measure of relief sought in the later litigation. *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir.1986). Thus, in the present case, defendants cannot prevail on their *res judicata* defense if the state court did not have the power to award the full measure of damages which plaintiffs are seeking in this subsequent litigation.

■ New York state courts may award damages in Article 78 proceedings only if two conditions are met. First, the damages must be "incidental to the primary relief sought," and second, the relief must be "such as [the petitioner] might otherwise recover on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity." N.Y. Civ.Prac.L. & R. § 7806 (McKinney 1981) ("CPLR"). The Second Circuit has recognized that there is "substantial" New York case law indicating that damages for civil rights violations are *not* incidental to the primary relief sought in an Article 78 proceeding. *Davidson*, 792 F.2d at 278–79. Therefore, in *Davidson* the Second Circuit held that plaintiffs' damages for alleged civil rights violations could not be characterized as incidental to the primary relief sought in the Article 78 proceeding, and so could not have been awarded under § 7806.

**8.** According to Carino, in his Notice of Appeal to the Court of Appeals he sought leave to appeal, and he sought to proceed with an appeal as of right. Carino Affidavit at ¶ 10.

**9.** Although it appears that defendants asserted only the affirmative defense of collateral estoppel in their answer, *see* Answer at ¶ 13, in this Circuit defendants are not deemed to have waived the affirmative defense of *res judicata* by failing to expressly assert it in their answer. Under Rule 8(c), *res judicata* and collateral estoppel are defenses which must be affirmatively pleaded in the answer. This Circuit has recognized, however, "[t]hat in the interest of efficient and expeditious judicial administration, the defense of *res judicata* can be raised and

considered at the pretrial stage.... This is particularly true where, as here, the issue is raised by way of motion for summary judgment so that the plaintiff is provided with an adequate opportunity to present arguments rebutting the defense...." *Weston Funding Corp. v. Lafayette Towers, Inc.*, 410 F.Supp. 980, 982 n. 2 (S.D.N.Y. 1976) (citations omitted), *aff'd on other grounds*, 550 F.2d 710 (2d Cir.1977). Thus, as in *Weston Funding*, because defendants raised a *res judicata* defense in their summary judgment motion, giving plaintiffs ample opportunity to respond, in the interest of judicial economy, the court will consider defendants' *res judicata* defense on this pretrial motion, even though defendants did not assert it in their answer.

Consequently, in *Davidson* plaintiff's subsequent federal court action was not barred by *res judicata*, despite the fact that that action arose out of the same set of facts as did plaintiff's prior state court action. *See also Fay v. South Colonie Cent. School Dist.*, 802 F.2d 21, 29–30 (2d Cir.1986) ("Although Fay [plaintiff] could have litigated his claims for injunctive relief in the Article 78 proceeding and is therefore barred from doing so now, he is not barred from pursuing his claims for damages.").

Here, in addition to seeking injunctive relief, plaintiffs are also seeking compensatory and punitive damages, as well as attorneys' fees, with respect to both their § 1983 and § 1985 based causes of action. While it is correct that the § 1983 and § 1985 claims in the present case arise out of the same transaction as the state court claims, Carino would not have been entitled to collect damages in the Article 78 proceeding because he would not have satisfied § 7806 of the CPLR requiring that damages be "incidental to the primary relief sought." Under the *Davidson* rationale, *res judicata* does not bar the present action because the initial forum—state court—did not have the power to award the full measure of relief being sought in this court; in particular, although the state court could have awarded Carino injunctive relief in that proceeding, it was without power to award damages for any alleged civil rights violations. Thus, defendants clearly cannot rely on the doctrine of *res judicata* to bar plaintiffs from pursuing their civil rights claims in this court; and consequently defendants' cross-motion for summary judgment on that ground is denied.

## II. COLLATERAL ESTOPPEL

In addition to asserting the affirmative defense of *res judicata*, defendants assert that plaintiffs are precluded from relitigating the issues raised in their federal complaint based on the doctrine of collateral estoppel, a narrower class of *res judicata*. As with the doctrine of *res judicata*, a federal court must give the same preclusive effect to a judgment involving allegedly identical issues as would the law of the state rendering the judgment. *Migra*, 465 U.S. at 81, 104 S.Ct. at 896, 79 L.Ed.2d at 61–62; *Murphy v. Gallagher*, 761 F.2d 878, 881 (2d Cir.1985). Quoting from the seminal case of *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 298 N.Y. S.2d 955, 246 N.E.2d 725 (1969), the Second Circuit repeated the requirements for collateral estoppel in New York:

> New York has now reached the point where there are but two necessary requirements for invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling.

*Wilder v. Thomas*, 854 F.2d 605, 617 (2d Cir.1988), *cert. denied*, 489 U.S. 1053, 109 S.Ct. 1314, 103 L.Ed.2d 583 (1989). The burden of establishing identity of issues and that those issues were necessarily decided rests upon the party claiming the benefits of collateral estoppel. *Schwartz*, 24 N.Y.2d at 73, 298 N.Y.S.2d at 962, 246 N.E.2d at 730. The burden is on the party opposing application of the collateral estoppel doctrine, however, to demonstrate the lack of a full and fair opportunity to litigate the issue in the prior action. *Id.* It is with those basic principles in mind that the court will now examine defendants' collateral estoppel defense.

### A. *Identity of Issues Necessarily Decided*

Despite a lengthy and rather confusing complaint, on these motions plaintiffs themselves have identified only two separate issues which they claim were not necessarily decided in state court, thus rendering the collateral estoppel doctrine inapplicable. The first issue, as defined by plaintiffs, is "[w]hether the zoning ordinance of the Town of Deerfield violates the free speech rights and concomitant right to re-

ceive information of the plaintiffs...." [10] Plaintiffs' Answering Brief in Answer to Defendants [sic] Cross Motion and Supporting Briefs of Defendants ("Plaintiffs' Answering Brief") at 20. The second issue, according to plaintiffs, is "[w]hether the zoning ordinance of the Town of Deerfield is preempted by the FCC Report and Order." [11] *Id.* Although plaintiffs limited the issues to first amendment and federal preemption, a careful reading of their complaint, *see* complaint at ¶ 48, as well as of their brief, *see* brief at 28–36, indicates that plaintiffs are apparently also asserting an equal protection claim.

### 1. Equal Protection

 Perhaps because they recognized that the state supreme court did explicitly address the equal protection argument in its memorandum decision, plaintiffs do not forcefully assert that this court should once again address that issue. However, because plaintiffs did raise the equal protection issue in both their federal complaint and in their federal brief, for the sake of completeness, the court is compelled to consider that issue in its analysis of defendants' collateral estoppel defense.

Even though Carino meshed his equal protection argument with his preemption argument in his state court memorandum, a careful reading of that memorandum and plaintiffs' brief in this action demonstrates that the equal protection issue raised in this action is identical to that raised and expressly rejected by the state supreme court. The state supreme court accurately summarized Carino's equal protection argument as follows: "[t]he zoning ordinance in question unfairly discriminates against certain classes of property owners in violation of the 14th Amendment to the U.S. Constitution." Record at 5. Likewise, in the present case plaintiffs contend, albeit more extensively than in their state court memorandum, that the zoning ordinance is discriminatory in violation of the equal protection clause. *See* Plaintiffs' Brief at 28–36.

The state supreme court explicitly rejected that equal protection argument as specious; [12] thus, it is abundantly clear that the equal protection issue raised in this action is identical to that which was raised in the state court. It is equally clear that that issue was also necessarily decided in the prior state action. Plaintiffs are therefore barred from relitigating that equal protection issue before this federal court, based upon the doctrine of collateral estoppel.

### 2. Federal Preemption

 It is equally clear that the federal preemption claim presented in plaintiffs' complaint in this action is identical to that presented and necessarily decided in the state court Article 78 proceeding. Both the state court memorandum and plaintiffs' brief here contain the argument that the zoning ordinance is preempted by 47 C.F.R. § 25.104. *See* Record at 68–70 and Plaintiffs' Brief at 40–42. In essence, plaintiffs argue that the zoning ordinance is preempted by that federal regulation because the ordinance differentiates between satellite receive-only and other types of antenna facilities. Although plaintiffs contend otherwise, it is obvious to this court that the state supreme court considered Carino's preemption argument and specifically rejected it. In particular, the state supreme court found that the federal regulation did not preempt application of the zoning ordinance because that ordinance "[d]oes not discriminate or differentiate with respect to satellite dish antennas...." Record at 7.

Plaintiffs attempt to avoid the fact that the state supreme court expressly considered and rejected Carino's preemption argument. Plaintiffs make the rather obtuse argument that the state court "[n]ever reached the application of the FCC Report and Order [47 C.F.R. § 25.104] on the merits by reason of having misapplied the

---

**10.** Hereinafter that issue will be referred to as the first amendment issue.

**11.** Hereinafter that issue will be referred to as the federal preemption issue.

**12.** *See* Record at 7.

threshold application testimony." [13] Apparently plaintiffs' self-devised threshold test is that the initial determination made by a court must answer whether a regulation addresses all fixed antenna systems including television, satellite and radio antennas, in the same restrictive manner. The plaintiffs assert that the state court did not examine the Deerfield zoning ordinance in that way, and thus the preemption issue was not necessarily decided in that proceeding.

While it is difficult to discern the exact nature of plaintiffs' argument, as set forth above, the state supreme court certainly did consider Carino's preemption argument on the merits, and decided that that argument was without merit. The court notes that even if the state court erred, that does not mean that this court can disregard the preclusive effect of the prior state court proceeding. *Ellentuck v. Klein*, 570 F.2d 414, 425 (2d Cir.1978) (*quoting Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 274 (2d Cir.1977)) (application of *res judicata* and collateral estoppel " '[d]oes not depend on whether the prior judgment was free from error.' ") Thus, defendants have satisfied the first prong of the *Schwartz* test with respect to the preemption issue.

### 3. First Amendment

 The final issue for the court's consideration in this collateral estoppel analysis is the first amendment issue. Insofar as identity of issues is concerned, the court is of the opinion that although not couched in precisely the same language, nevertheless, there is an identity of issues between the first amendment issue raised in state court and the one raised in this court. As an aside the court notes that the "[b]asis of establishing an identity of issues is broader and more practical" than requiring "[a] showing that the issue in the prior action was framed in the same language or that the same theory of liability was charged as in the subsequent action." *Collard v. Incorporated Village of Flower Hill*, 604 F.Supp. 1318, 1323 (E.D.N.Y.1984), *aff'd*, 759 F.2d 205 (2d Cir.1985), *cert. denied*, 474 U.S. 827, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985).

Consequently, the fact that Carino's first amendment argument as presented to the state supreme court was not as extensive as that submitted to either the Appellate Division, or more importantly, to this court, does not mean that plaintiffs can avoid the collateral estoppel defense asserted by defendants.

In his state court memorandum Carino implicitly argued that the zoning ordinance violated his first amendment rights because it imposed "unreasonable limitations on and/or prevent[ed] the use of the satellite dish ... because the lot is less than one-half acre in size." Record at 69. While the exact nature of Carino's first amendment claim is somewhat difficult to discern from that language, his original petition to the state supreme court at the commencement of the Article 78 proceeding clarifies that claim. Specifically, in his petition, Carino alleged:

> That the right of the Petitioner to receive suitable access to the mediums provided by the use of the satellite dish at his home is a constitutionally protected right, secured by the First Amendment to the United States Constitution.

> That the Zoning Ordinance of the Town of Deerfield as applied to the Petitioner, preventing him from receiving the mediums available via the satellite dish antenna, and violates Petitioner's First Amendment Rights.

Record at 12, ¶ 13. Here, plaintiffs similarly contend, "[t]he right of a homeowner to install and operate a usable satellite receive-only dish antenna is protected by the First Amendment of the United States Constitution." Plaintiffs' Brief at 12. Thus, the court is convinced that there is an identity of issues between the first amendment issue presented in the prior state court proceeding and that presented to this court.

The court further observes that on appeal to the Appellate Division the first amendment issue was explicitly raised and exhaustively briefed in almost precisely the same manner as it was to this court. By

---

**13.** Plaintiffs' Answering Brief at 21–22.

their own admission, the brief plaintiffs submitted to this court is identical to that which they submitted to the Appellate Division, except that six points have been added to the federal brief, but none of those points pertain to the first amendment issue. Indeed, plaintiffs' attorney averred that he submitted the same brief to this court as he did to the Appellate Division, "modified only slightly." Motion and Affirmation of Counsel (January 19, 1989) at ¶ 4. In light of that fact, plaintiffs' argument that there is not an identity of issues, especially with respect to those presented to the Appellate Division, is disingenuous, at best.

■ Having determined that there is an identity of issue between the first amendment issue raised before this court and that raised in the state court proceedings, the court now examines the somewhat more troublesome issue of whether that first amendment issue was necessarily decided, for collateral estoppel purposes, in the prior state court proceedings. Plaintiffs contend that neither the state supreme court nor the Appellate Division addressed Carino's contention that the zoning ordinance violated his alleged first amendment right to receive information. The plaintiffs therefore posit that no decision was made on the merits, and hence no preclusive effect should be given to the state court proceedings.

Although it does appear that neither the state supreme court nor the Appellate Division specifically identified and addressed any first amendment issues in their respective decisions, that fact does not save plaintiffs from defendants' collateral estoppel defense. In *Winters v. Lavine*, 574 F.2d 46 (1978), the Second Circuit held that even though the Appellate Division did not allude to the constitutional issue plaintiff presented to it, that fact did not enable plaintiff to avoid the preclusive effect of the prior state court judgment. The Court reasoned:

> It is not significant, moreover, that the Appellate Division's opinion does not allude to the constitutional issue which

Winters had clearly submitted to that court for resolution, for, as appellant concedes, *it is entirely possible for a court to consider and reject a particular claim presented to it without any express discussion of or allusion to that claim.* Indeed, on two recent occasions we have emphasized this very point. 'The silence of the [court's] opinion on the constitutional issue is of course immaterial.' *Tang v. Appellate Division, supra,* 487 F.2d [138] at 141 n. 2 [2nd Cir.1973]; *accord, Lecci v. Cahn,* 493 F.2d 826, 830 (2d Cir.1974) ('The fact that the affirmances in the state courts were without opinion or without specific reference to the constitutional question is of course immaterial.') As was true in *Grubb v. Public Utilities Commission,* 281 U.S. 470, 477–78, 50 S.Ct. 374, 377–78, 74 L.Ed. 972 (1930), we find here that '[t]he question of the constitutional validity of the [statute, so construed,] was distinctly presented by [Winters'] petition and necessarily was resolved against [her] by the [decision upholding the denial of benefits]. Omitting to mention that question in the opinion did not eliminate it from the case or make the judgment of affirmance any less an adjudication of it.'

*Id.* at 60–61 (emphasis added). *Accord, Norris v. Grosvenor Marketing Ltd.,* 803 F.2d 1281, 1285 (2d Cir.1986) (citation omitted) (considering the validity of a *res judicata* defense, the Court observed: "[t]he issue dispositive of the present action must have been necessarily decided in the prior action. This does not mean that the prior decision must have been explicit. 'If by necessary implication it is contained in that which has been explicitly decided, it will be the basis for collateral estoppel.' ")

Relying on the Court's reasoning in *Winters,* this court concludes that because the first amendment issue was raised in the state supreme court, by Carino in both his original petition and implicitly in his memorandum of law, and also responded to by respondents,[14] the state supreme court nec-

---

**14.** Despite the fact that Carino's first amendment argument to the state supreme court was

somewhat veiled in his memorandum of law, it is obvious that that argument was squarely be-

essarily decided that issue, albeit *sub silentio*, unfavorably to Carino. Moreover, in light of *Winters*, plaintiffs' assertion that the Appellate Division failed to address the first amendment issue is not compelling. As in *Winters*, the first amendment issue was plainly presented to not only the state supreme court, but also to the Appellate Division, and the fact that both decisions were silent with respect to that issue is immaterial. That issue was necessarily decided against Carino when the state supreme court dismissed his petition in its entirety, and the Appellate Division affirmed that dismissal.

■■■ Plaintiffs set forth several reasons why they believe that the first amendment issue was not necessarily decided in the prior litigation. First, plaintiffs believe that the New York Court of Appeals refused to hear Carino's appeal based upon procedural grounds, and so they contend that the first amendment issue was not necessarily decided. On its own motion the Court of Appeals dismissed Carino's appeal taken as of right, however, because "[n]o substantial constitutional question [was] directly involved." *Carino*, 72 N.Y.2d at 1038, 534 N.Y.S.2d at 935, 531 N.E.2d at 655. Contrary to plaintiffs' assertion, that holding indicates that the Court of Appeals did examine all of Carino's claims. In *Turco v. Monroe County Bar Ass'n*, 554 F.2d 515 (2d Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 95 (1977), the Second Circuit stated that, "as a legal matter, a dismissal by the New York Court of Appeals for want of a substantial constitutional question is tantamount to a dismissal of the constitutional issues on the merits and is thus determinative of the issues actually raised and litigated, either by way of res judicata or collateral estoppel." *Id.* at 521.

Thus, based upon *Turco*, this court finds that the significance of the Court of Appeal's dismissal of Carino's claims for want of a substantial constitutional question was "tantamount to a dismissal of the constitutional issues on the merits," including the first amendment issue.

Second, plaintiffs contend that they should not be precluded from relitigating the first amendment issue because the state court erred in its application of the law by shifting the burden to them to prove the zoning ordinance was unconstitutional. This error, plaintiffs argue, shows that the merits of the alleged first amendment violated were never reached. This contention is not persuasive however because, as previously mentioned, error does not affect the preclusive effect of a judgment. *See Ellentuck v. Klein*, 570 F.2d at 425.

■■■ Third, despite the obvious identity of the constitutional issues and the preemption issue, plaintiffs believe that because the issues raised in state court were not raised in the context of a § 1983 claim, those issues may now be raised in plaintiffs' § 1983 claim in this court. *See* Plaintiffs' Answering Brief at 23. Plaintiffs rely on *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), to support their position; plaintiffs' reliance is misplaced however. *Wooley* does not, as plaintiffs would like this court to hold, stand for the proposition that constitutional claims previously raised in a state court action may be raised again in a subsequent § 1983 federal court action. Indeed, the *Wooley* Court did not even consider the applicability of collateral estoppel. Rather, the *Wooley* Court simply held that *Younger* abstention[15] did not bar federal jurisdiction therein where there existed a "genuine threat of prosection...." *Id.* at 710, 97

fore the state supreme court, because not only did Carino raise it in his memorandum of law, but, as previously stated, he also raised it in his original petition. Additionally, respondents directly attacked Carino's first amendment argument in their state supreme court memorandum of law. *See* Record at 84. So, if state supreme court had any doubt as to whether Carino was presenting for its consideration an alleged violation of his first amendment rights, that doubt should have been dispelled by a reading of the petition and respondents' memorandum of law, which both expressly raised that issue.

15. In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that, based upon principles of judicial economy and comity, federal courts are precluded from exercising equitable jurisdiction to enjoin ongoing state court proceedings. *Id.* at 43, 91 S.Ct. at 750, 27 L.Ed.2d at 675.

S.Ct. at 1433, 51 L.Ed.2d at 759. Thus, in light of the real threat of state court prosecution, the Court allowed plaintiffs to pursue a § 1983 cause of action in federal court to seek redress for an alleged deprivation of federal civil rights. *Id.* Due to the obvious factual distinctions between *Wooley* and the present case, the court is not convinced that these plaintiffs can avoid application of the collateral estoppel doctrine simply because the issues raised in state court were not raised in the context of a § 1983 claim.

### B. *Full and Fair Opportunity*

Turning to the second prong of the *Schwartz* test, the court must next determine whether plaintiffs, as the opponents of collateral estoppel, have met their burden of showing that they did not have a full and fair opportunity to contest the state court decision, which defendants contend is controlling. *See Schwartz*, 24 N.Y.2d at 72, 298 N.Y.S.2d at 961, 246 N.E.2d at 729–30. The Court of Appeals has enumerated the following factors to be considered in determining whether a litigant was afforded his day in court:

> the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence [and] the differences in the applicable law.

*Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 501, 478 N.Y.S.2d 823, 827, 467 N.E.2d 487 (1984). *See, also Schwartz*, 24 N.Y.2d at 75, 298 N.Y.S.2d at 962, 246

N.E.2d at 730–31. In light of the factors enumerated in *Ryan*, the court is convinced that there certainly was a full and fair opportunity to litigate.

▮▮▮▮▮ There is no doubt that the forum was an appropriate one.[16] There can also be no dispute that Carino had ample opportunity and incentive to present his constitutional claims, as well as his federal preemption claim; and indeed he did. Finally, understandably, there is no claim here that Carino was not represented by competent counsel at every step of the way in the state court proceedings.

### C. *Identity of Parties*

In a final effort to avoid application of the collateral estoppel doctrine, plaintiffs contend that since the parties in the two actions are not identical, this court cannot invoke collateral estoppel. The Second Circuit has rejected the notion that there must be literal privity, however, before parties may be viewed as identical. *Alpert's Newspaper Delivery v. New York Times Co.*, 876 F.2d 266, 270 (2d Cir.1989) (*citing Expert Elec. Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977)). According to the Second Circuit, this court cannot bar Mr. and Mrs. Carino, who were not parties in the prior state court litigation, from litigating issues necessarily decided therein unless it finds that "their interests were adequately represented by [Carino]" and that Carino was "vested with the authority of representation." *Expert Elec.*, 554 F.2d at 1233. The *Expert Elec.* Court explained:

**16.** There has been some mention that the Article 78 proceeding may not have been the proper procedural mechanism for examining Carino's constitutional claims. While generally it is true that under New York law it is not proper to examine a constitutional claim in an Article 78 proceeding, *Matter of Overhill Bldg. Co.*, 28 N.Y.2d 449, 458, 322 N.Y.S.2d 696, 703, 271 N.E.2d 537, 542 (Ct.App.1971), New York courts have recognized that "[w]here all the necessary parties are present before Special Term, it may test the constitutionality of the statute itself by treating the Article 78 petition challenging the statute on its face as a declaratory judgment action." *CECOS Intern., Inc. v. Jorling*, 895 F.2d 66, 71 (2nd Cir.1990) (citations omitted). In

addition, "[t]he question of whether the statute has been *applied* in an unconstitutional fashion may be raised directly in an Article 78 proceeding." *Id.*

In the present case, these plaintiffs acknowledge that the state supreme court considered the constitutional issues in the Article 78 proceeding as if they were raised in a declaratory judgment action. *See* Plaintiffs' Brief at 26–27. Based upon the fact that, as plaintiffs admitted, the state supreme court appeared to treat Carino's petition as one for declaratory judgment, as it was required to do, plaintiffs cannot now argue that Carino was not afforded his day in court in the prior litigation.

While often justified by the doctrine of privity, *the theory underlying this general proposition is that the party bound is in substance the one whose interests were at stake in the prior litigation.*

*Id.* (emphasis added). There are several factors relevant to making the determination of adequate representation and authority of representation, as ennunciated in *Expert Elec.* Those factors include, "[t]he exercise of control by the non-party over the conduct of the litigation of the prior proceeding, . . ., and identity of interest between the non-party and the litigating party with respect to a cause of action, . . ., and the willingness of the non-party to allow its common interest to be represented. *Fried v. Brevel Motors, Inc.*, 666 F.Supp. 28, 30 (E.D.N.Y.1987) (citations omitted).

In light of the criteria set forth in *Fried,* the court is persuaded that there is a sufficient identity of parties between Mr. and Mrs. Carino and their son to preclude all three plaintiffs herein from relitigating the issues necessarily decided in the prior litigation. Although the record is silent as to the amount of control Mr. and Mrs. Carino exercised over the state court proceedings brought by Joseph A. Carino, there is clearly an identity of interests between Mr. and Mrs. Carino and their son. First, Mr. and Mrs. Carino own the property where young Carino installed the satellite receiving dish; and that property is indisputably governed by the zoning ordinance. In fact, not only was Joseph A. Carino charged with violating the zoning ordinance, but his father, Joseph Carino, Sr., was also charged. Carino Affidavit at ¶ 28. Second, Carino resides with his parents on that property; and indeed in his state court petition Carino described himself as a "tenant." Record at 11.

Third, Carino installed the dish on his parents' property with "their permission and consent and with their knowledge." *See* Complaint at ¶¶ 6–8. Plaintiffs state, "That the approval of Joseph Carino, Sr. and Sylvia Carino was not sought with regard to the erection of the satellite receive-only dish antenna." Plaintiffs' Statement and Counterstatement of Material Facts at ¶ 4. Coincidentally, that statement appeared *after* the defendants had asserted their *res judicata* and collateral estoppel defenses. Even assuming Carino did not have his parents' permission to install the dish, that fact does not change the court's opinion that Joseph Carino, Sr. and Sylvia Carino, although not parties to the prior litigation, are undoubtedly the ones whose interests were at stake therein.

Fourth, the variance sought by Carino was for the property that his parents own and the same property on which the satellite dish is located. Carino's contention that his parents' approval was not obtained prior to commencing the Article 78 proceeding does not bear upon this court's evaluation. The fact remains that all of the plaintiffs would have benefited from the variance application and from success in subsequent state court litigation. That is especially so considering the fact that both Mr. Carino and his son were charged with violating the Deerfield zoning ordinance.

Moreover, it appears to the court that the non-parties, Mr. and Mrs. Carino, were willing to allow their common interests to be represented by their son. There is absolutely nothing in the record presently before the court showing that Mr. and Mrs. Carino sought to intervene, or in any other way intercede in their son's state court action. Common sense dictates that given the close physical proximity between the three Carinos (living in the same house), Mr. and Mrs. Carino were well aware of the nature of their son's state court battles; and that it was, in essence, their interests which he was representing throughout the course of that litigation. Thus, if they were in any way displeased with how their interests were being represented in that state court litigation, they should have come forth at that time.

This case, although arising in an obviously different factual context, is not unlike *Coalition For A Progressive New York v. Colon,* 722 F.Supp. 990 (S.D.N.Y.1989). In *Coalition,* the court deemed there to be a "sufficiently close nexus" between a candi-

date for public office and his campaign manager, and a sufficiently identical interest between the party and the non-party so that the campaign manager was barred by collateral estoppel from bringing a subsequent federal court action, even though the campaign manager was not a party to the prior state court proceeding. *Id.* at 997. The court reasoned, "[i]n view of the [campaign manager's] intimate role in the campaign, she can be assumed to have had full knowledge of the prior state invalidation proceeding brought against [the candidate.]" *Id.* The court then concluded, "[t]he relationship between nonparty and party is 'close enough to be viewed as an authorization by the former to the latter to represent [her] ... in the state courts.'" *Id.* (*quoting Tarpley v. Salerno,* 803 F.2d 57, 60 (2d Cir.1986)).

Likewise, in the present case, the court finds a sufficiently close nexus between Mr. and Mrs. Carino and their son and sufficiently identical interests between them to justify precluding them from relitigating the matter. The policy concerns discussed in *Coalition* apply with equal force here:

> It should be added that a holding to the contrary would undermine the salubrious ends the doctrine of collateral estoppel serves, without contributing to any due process goal. While it cannot honestly be maintained by campaign manager Love that her interests have been unfairly deprived of representation, certain of the defendants genuinely argue that allowing this action to proceed would require their costly participation in a proceeding dedicated to relitigating issues that already have been conclusively determined after exhaustive proceedings in another forum. Of equal concern is the redundant expenditure of judicial resources that would be required were Love permitted to proceed.

*Coaltion,* 722 F.Supp. at 997.

 Lastly, there is the fact that the defendants in these two actions are different. Even though the Town of Deerfield and Harron Cable were not parties to the previous state court action, that fact does not preclude them from using the doctrine of collateral estoppel against these plaintiffs. Mutuality of parties is *not* required for application of the doctrine of collateral estoppel. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (permitting use of offensive collateral estoppel). A requirement of complete identity of parties serves no purpose as long as the person against whom the findings are asserted or his privity has had a full and fair opportunity to litigate the identical issue in the prior action. *See Blonder–Tongue Lab. Inc. v. University of Illinois Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788, 799–800 (1971). This court has already determined that all plaintiffs had a full and fair opportunity to litigate the identical claims raised in this action. Therefore, the fact that defendants Harron and the Town of Deerfield were not parties to the prior state court proceeding does not preclude them from relying upon the collateral estoppel doctrine in this action.

## III. CONSPIRACY CLAIMS

 Plaintiffs' penultimate claim is an alleged conspiracy under 42 U.S.C. § 1985. A claim under that section must allege that 1) the plaintiff was a member of a protected class; 2) the defendants conspired to deprive plaintiff of his constitutional (or federal law) rights; 3) the defendants acted with a class-based, invidiously and discriminatory animus; and 4) plaintiff sustained damages as a result of the defendant's actions. *Gleason v. McBride,* 869 F.2d 688, 694–95 (2d Cir.1989) (citations omitted). While the plaintiffs have alleged a conspiracy to deprive them of their rights under the constitution, they have not identified the "protected class" to which they allegedly belong; nor have they alleged that the defendants acted with a race or class-based discriminatory animus.[17] Consequently, defendants' motion for summary

---

**17.** This court finds no legal support, nor did plaintiffs provide any, for the proposition that residential property owners, as opposed to commercial property owners, are members of a protected class within the meaning of § 1985.

judgment is granted with respect to plaintiffs' conspiracy claim based upon § 1985.

It is unclear whether plaintiffs have additionally pled a conspiracy cause of action based upon 42 U.S.C. § 1983. Reading the complaint in a light most favorable to the plaintiffs, the court assumes that they have. A § 1983 conspiracy necessitates proving " 'an actual deprivation of a constitutional right.' " *Dean Tarry Corp. v. Friedlander*, 826 F.2d 210, 213 (2d Cir. 1987) (*quoting Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir.1984)). As previously discussed, the state courts found no deprivation of Carino's constitutional rights. That issue having been heard and decided, the plaintiffs are precluded from relitigating it in this court, and will thus be unable to prove a necessary element of their § 1983 conspiracy claim.

Additionally, if the constitutionality of the Deerfield zoning ordinance had been established, then the Town of Deerfield, which enacted and applied the ordinance, could not have deprived plaintiffs of their constitutional rights. As the Second Circuit stated in *Ellentuck v. Klein, supra,* the alleged conspiracies in this action are "[v]ague and conclusory, showing no more than a history of State court litigation that resulted in a decision adverse to the plaintiffs' interests." *Ellentuck*, 570 F.2d at 426 (§ 1985 claim raised under similar facts of prior litigation). Defendants' motion for summary judgment therefore must also be granted insofar as plaintiffs allege a conspiracy in violation of § 1983.

### Conclusion

For the reasons discussed herein, plaintiffs' motion for partial summary judgment is denied; and defendants' cross-motion for summary judgment is granted; and the complaint herein is dismissed.

IT IS SO ORDERED.