**TOWN OF DEERFIELD, NEW YORK, Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,**

Joseph A. Carino, United States Satellite Broadcasting Company, Inc., Satellite Broadcasting & Communications Association of America, Hughes Network Systems, Inc., Intervenors.

No. 350, Docket 92–4081.

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 1992.

Final Briefs Submitted Nov. 23, 1992.

Decided April 27, 1993.

---

Thomas P. Hughes, Utica, NY (Rossi, Murnane, Balzano & Hughes, on the brief), for petitioner.

John E. Ingle, Deputy Associate Gen. Counsel, F.C.C., Washington, DC (Robert L. Pettit, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, James M. Carr, Counsel, Charles A. James, Acting Asst. Atty. Gen., Robert B. Nicholson, Marion L. Jetton, U.S. Dept. of Justice, on the brief), for respondents.

W. James MacNaughton, Woodbridge, NJ, for intervenor Joseph A. Carino.

Marvin Rosenberg, Washington, DC (Mania Baghdadi, Fletcher, Heald & Hildreth, of counsel), for intervenor U.S. Satellite Broadcasting Co., Inc.

Diane S. Killory, Washington, DC (Mary K. O'Connell, Morrison & Foerster, of counsel), for intervenor Satellite Broadcasting and Communications Ass'n of America.

F. Thomas Tuttle, Washington, DC (Blumenfeld & Cohen, of counsel), for intervenor Hughes Network Systems, Inc.

Before: KEARSE, MINER, and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

This controversy, which centers on the installation by intervenor Joseph A. Carino of a satellite-dish antenna in his backyard in the Town of Deerfield, New York ("Deerfield"), in violation of a Deerfield zoning ordinance, returns to this Court following a sequence of state-court, federal-court, and administrative-agency adjudications. Petitioner Deerfield seeks review of an order of respondent Federal Communications Commission ("FCC" or "Commission") holding, at the behest of Carino, that the Deerfield ordinance was preempted by a regulation of the FCC. *See In re Preemption of Satellite Antenna Zoning Ordinance of Town of Deerfield, New York*, 7 F.C.C.R. 2172 (1992). In support of its petition for review, Deerfield contends principally (1) that because courts of competent jurisdiction had ruled in cases brought by Carino that the FCC regulation did not preempt Deerfield's ordinance, principles of collateral estoppel barred the FCC from ruling that its regulation did preempt the Deerfield ordinance, and (2) that even if principles

of collateral estoppel did not apply, the FCC's ruling was arbitrary and capricious.

For the reasons below, we grant the petition for review and reverse the order of the FCC.

## I.  BACKGROUND

The events and the procedural history of this matter do not appear to be in dispute.

### A.  *The FCC Regulation and the Deerfield Zoning Ordinance*

In February 1986, partly in response to fears in the broadcast communications industry that local zoning ordinances might interfere with the installation of satellite antennas by individuals and thus frustrate the federal goal of expanding satellite-delivered services, *see In re Preemption of Local Zoning Regulations of Receive–Only Satellite Earth Stations,* 100 F.C.C.2d 846, 856 (1985), the FCC promulgated a regulation that stated as follows:

**Preemption of local zoning of earth stations.**

State and local zoning or other regulations that differentiate between satellite receive-only antennas and other types of antenna facilities are preempted unless such regulations:

(a) Have a reasonable and clearly defined health, safety or aesthetic objective; and

(b) Do not operate to impose unreasonable limitations on, or prevent, reception of satellite delivered signals by receive-only antennas or to impose costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment.

Regulation of satellite transmitting antennas is preempted in the same manner except that state and local health and safety regulation is not preempted.

*Preemption of Local Zoning or Other Regulation of Receive–Only Satellite Earth Stations,* 51 Fed.Reg. 5519, 5526 (1986) (codified at 47 C.F.R. § 25.104 (1992) ("1986 Regulation" or "§ 25.104")).

In adopting § 25.104, however, the FCC had no desire to become, in effect, "a national zoning board," and it sought to avoid the administrative burden of having to review a large number of cases individually. It therefore suggested that individual satellite-antenna users who believed that local zoning ordinances conflicted with the 1986 Regulation should simply invoke § 25.104 "in pursuing any legal remedies they might have" against such an ordinance. The Commission stated that it "would entertain requests for further action if it appears that local authorities are generally failing to abide by our standards"; but it stated that "[a]ny party requesting Commission review of a controversy will be expected to show that other remedies have been exhausted." 1986 Regulation at 5524.

In April 1986, Deerfield adopted a zoning ordinance prohibiting, *inter alia,* the installation of satellite-dish antennas on residential lots of less than one-half acre. That ordinance provided, in pertinent part, as follows:

B.  DISH OR TOWER TYPE ANTENNAE:

General Regulations:

a.  In R–1 or R–2 District no dish or tower type antennae shall be erected on any lot less than one-half (½) acre.

b.  No dish or tower type antennae shall be located in a front yard or corner lot fronting on more than one street.

c.  No dish or tower type antennae shall be erected on any lot without the issuance of a building permit by the enforcement officer(s) and subject to the following so as to be cosmetically acceptable for all adjoining landowners:

1.  All towers and antennae shall have setbacks from any lot line equal to or greater than the height of the proposed structure, but in any case not less than thirty (30) feet.

2.  Only one such structure shall exist at any one time on any lot or parcel.

3.  The applicant shall present documentation of the possession of any required federal or state license.

4.  The owner of such a structure shall assume complete liability in case of personal or property damage.

d.  Dish Type—special regulations:

1.  No part twelve (12) feet above ground level.

2. Projected area:

Solid type—51 square feet

Mesh type—80 square feet

. . . .

Deerfield Zoning Ordinance § 17(B) (eff. April 14, 1986) ("Zoning Ordinance" or "Ordinance"). The Ordinance further defined a tower-type antenna as "[a] structure weighing more than one hundred (100) pounds utilized to transmit and/or receive electromagnetic waves (i.e. radio, television, short-wave signals)," and described a dish antenna as a device that

[c]onsists of three main components—the antennae [sic] itself, often called a dish; a low-noise amplifier (LNA); and a receiver. The antennae [sic] and LNA are generally located outdoors and are connected by coaxial cable to the receiver, which is usually placed indoors.

*Id.* § 3.

B. *Carino's Satellite Dish and His First Request for FCC Support*

Carino lived in Deerfield on a lot that was smaller than one-half acre. Sometime between April 1986 and February 1987, he installed a satellite-dish antenna in his backyard. In February 1987, a Deerfield building inspector served on Carino a criminal-court summons for violation of the Zoning Ordinance. The criminal proceeding was held in abeyance while Carino attempted to obtain, first, a building permit and, later, a variance.

Carino's application for a building permit was quickly denied. His application for a variance resulted in hearings before the Deerfield Zoning Board of Appeals ("Zoning Board" or "Board") in March and April 1987. Carino appeared at the hearings and presented a petition signed by most of his neighbors in support of his application. None of his neighbors appeared in opposition. The Board denied the application on the grounds that Carino had failed to obtain the building permit required by the Ordinance prior to installing his antenna and had failed to show a hardship sufficient to justify issuing a variance. Carino argued that the Zoning Ordinance was preempted by the FCC's § 25.104,

but the Zoning Board declined to address that contention.

In the meantime, Carino had written the FCC asking for "HELP." He explained:

The local town Zoning Ordinance Says that to have a Satellite Dish installed on ones [sic] own property You Must Have a lot size of at least ½ acre.

Our lot is a little smaller and we might have to take our Satellite Dish out. The town has been giving us a hard time. I've been to court once already and have to go again in the near future.

PLEASE HELP. ANY INFORMATION YOU CAN GIVE ME WILL BE GREATLY APPRECIATED.

Thank you for any help you can give me.

(Letter dated February 28, 1987, from Joseph A. Carino to FCC Chief of Satellite Radio Branch.) In response, Carino received a letter setting forth the text of § 25.104 along with the following explanation:

Individuals who are dissatisfied with the actions taken by local zoning authorities can use the Commission's rule to pursue legal remedies on a local level. Unfortunately, we do not have sufficient resources to offer legal opinions with respect to individual problems or to intervene in local disputes. We therefore suggest that you consult with a private attorney in your area if you wish to assert any rights based on the Commission's rule.

Further Commission consideration of local zoning disputes is not contemplated at this time. Individual petitions may be considered at a later date. It appears that communities are generally failing to abide by our standards. Requests for relief under the Commission's rule must demonstrate that *all other remedies including legal action with the assistance of private counsel have been pursued and exhausted.* In addressing a petition for reconsideration, the Commission emphasized that communities must comply with the regulation or face preemption of their ordinance if legal action is taken by antenna users.

(Letter dated March 20, 1987, from FCC Chief of Satellite Radio Branch to Joseph A. Carino (emphasis added).)

Thereafter, Carino retained counsel and sought relief in the courts.

## C. *Carino's State–Court Lawsuit*

In May 1987, Carino commenced an Article 78 proceeding, *see* N.Y.Civ.Prac.L. & R. 7801, *et seq.* (McKinney 1981 & Supp.1993), in New York State Supreme Court against the Zoning Board and its members, challenging the Board's rulings. He contended principally (1) that the Board's decision was arbitrary and not based on substantial evidence, (2) that the Zoning Ordinance violated the Fourteenth Amendment to the United States Constitution by discriminating against certain classes of property owners, and (3) that the Ordinance was preempted by § 25.104.

In a Memorandum dated July 27, 1987 ("*Carino I* "), the state supreme court denied Carino's petition in its entirety. With respect to his first two contentions, the court found that Carino had failed to meet the requirements necessary to obtain a variance and had failed to establish that the Zoning Ordinance was unconstitutional. With respect to the preemption claim, the court found that the Ordinance "does not differentiate between satellite receive-only facilities and other antennas, it applies to both dish and tower type antennas." July 1987 Memorandum at 3. It thus held that the Zoning Ordinance did not discriminate against satellite-dish antennas and therefore was not preempted by § 25.104. *Id.*

Carino appealed unsuccessfully. The Appellate Division affirmed the denial of Carino's petition substantially for the reasons stated in *Carino I*. *See Carino v. Pilon,* 142 A.D.2d 996, 530 N.Y.S.2d 1022 (4th Dep't 1988) (mem.) ("*Carino II* "). Carino sought review of that decision by the New York Court of Appeals, attempting to appeal as of right and, alternatively, requesting leave to appeal. The Court of Appeals *sua sponte* dismissed the attempted appeal as of right for lack of a substantial constitutional question, and it denied the motion for leave to appeal. *See Carino v. Pilon,* 72 N.Y.2d 1038, 534 N.Y.S.2d 935, 531 N.E.2d 655 (1988) (mem.). Carino did not petition for review in the United States Supreme Court.

Following the Court of Appeals' rulings, the criminal court reactivated the proceedings against Carino, found him guilty, and fined him $100. That court also advised Carino that it would order that the antenna be removed on or before March 15, 1989. Carino has appealed from the conviction, and that appeal apparently remains pending.

## D. *Carino's Federal–Court Lawsuit*

In December 1988, Carino commenced suit against Deerfield and another in the United States District Court for the Northern District of New York pursuant to 42 U.S.C. § 1983 (1988), contending, *inter alia,* that the Zoning Ordinance violated his rights under the First and Fourteenth Amendments and that the Ordinance was preempted by § 25.-104. Deerfield argued that the preemption claim was foreclosed by principles of collateral estoppel, and in an opinion reported at *Carino v. Town of Deerfield,* 750 F.Supp. 1156 (N.D.N.Y.1990) ("*Carino III*"), the district court agreed. Relying on *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), and *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the court found that the preemption issue had been fully and fairly litigated and necessarily decided in the New York action. *See Carino III,* 750 F.Supp. at 1170. In so ruling, the district court observed, correctly, that "even if the state court erred, that does not mean that this court can disregard the preclusive effect of the prior state court proceeding." *Id.* at 1165.

Carino appealed the district court's judgment to this Court, which affirmed, by unpublished summary order dated June 21, 1991, substantially for the reasons stated in the district court's opinion. *See Carino v. Town of Deerfield,* 940 F.2d 649 (2d Cir.1991) (mem.) ("*Carino IV* ").

## E. *The FCC's Post–Lawsuit Preemption Ruling*

In the meantime, perhaps anticipating this Court's affirmance of the district court, Carino filed a Petition for Declaratory Ruling with the FCC in January 1991. In it, Carino noted that he had "done everything required

by the Commission to exhaust his judicial remedies (and more)," and that, by then, he had spent more than $14,000 in legal fees in his efforts "to protect his right to install a satellite dish antenna that costs approximately $1,500." Describing himself as "the victim of a gross misunderstanding of 47 C.F.R. § 25.104 by a state trial court judge in New York" who had thereafter been "stymied by complicated procedural obstacles and the reluctance of both state and federal courts to apply 47 C.F.R. § 25.104," Carino sought relief from the Commission as his "last hope for justice in this matter."

The FCC issued a public notice seeking comments on Carino's petition. Several organizations, including intervenors United States Satellite Broadcasting Company, Inc., and Satellite Broadcasting & Communications Association of America, submitted materials supporting the petition. Only Deerfield opposed the petition.

In its opposition papers, Deerfield initially noted that

> Carino candidly admits in his Petition [that] the question of preemption of the Town of Deerfield Zoning Ordinance has been litigated in both the courts of the State of New York and in the Federal District Court. Those cases resulted in final judgments that may not be attacked in this forum.

(Answer of the Town of Deerfield, dated March 13, 1991, at 2.) In papers submitted to the FCC following our decision in *Carino IV*, affirming the dismissal of Carino's federal action, Deerfield remarked that although Carino's petition had attracted substantial interest in the broadcasting industry, "the fact remains that [the] relief requested would benefit but one person." (Motion to Accept Late Filed Comments by Town of Deerfield, dated July 24, 1991, at 2–3.) Expanding on its initial submission, Deerfield further argued that

> [a]lthough the F.C.C. has discretion in determining issues within its jurisdiction, it is still bound by the law and it must respect final decisions of competent courts, at least as the decisions apply to the original parties to judicial proceedings. It is not within the power of the F.C.C. to act as a court

of last resort to review judicial determinations. In fact, it would be highly irregular for the Commission to issue an order in this pending proceeding that would, in any way, conflict with the Summary Order of the Court of Appeals for the Second Circuit, since that Court would be the forum in which judicial review of the Commission's Order would be sought (28 U.S.C. § 2342(1); 47 U.S.C. § 402(a)). Merely by retaining jurisdiction in this matter the Commission has placed itself in the position of reviewing the decision of a higher court. Such a power has obviously not been granted to the Commission by Congress.

(*Id.* at 2.)

In a Memorandum Opinion and Order released on March 31, 1992 ("FCC's 1992 Decision") the Commission rejected Deerfield's arguments and ruled that the Zoning Ordinance was preempted by the FCC regulation. The Commission stated, first, that because neither of the federal courts that had heard the dispute previously had discussed whether Carino would be estopped from "bringing the Deerfield ordinance to the FCC's attention," "Deerfield's suggestion that the Commission ruling in this case would be contrary to the decision of the Second Circuit is incorrect." FCC's 1992 Decision at 4.

The Commission stated further that even if principles of collateral estoppel would ordinarily apply, such principles should not be applied if their application would "result in unfairness," and it concluded that unfairness to Carino would result here because the Commission had, "[s]ince the adoption of our preemption rule, ... consistently insisted that individuals exhaust other legal remedies before requesting Commission relief." *Id.*

Thereby reaching the merits, the FCC ruled that the Deerfield Zoning Ordinance was preempted by § 25.104. The present petition for review followed.

## II. DISCUSSION

In support of its petition for review, Deerfield argues principally that the FCC was required to give res judicata and collateral estoppel effect to the state- and federal-court judgments entered in its favor against Cari-

no, and that the Commission's refusal to do so was contrary to law. In opposition, the FCC contends principally that it had discretion to disregard those judgments; that collateral estoppel was not applicable because the issue was one of law rather than fact; that it would not have been "fair" to Carino to give effect to those judgments since the Commission had advised him that he must pursue court remedies before the Commission would become involved; and that the Commission "should make the final determination" of whether a particular ordinance is preempted since "[t]he FCC has special expertise in the general matter of satellite antenna regulation, and unique understanding of its own regulations dealing with that matter." (FCC supplemental brief on appeal at 4.) For the reasons below, we reject the FCC's contentions and grant the petition for review.

A. *Availability and Standard of Review*

■ As an independent agency, the FCC possesses some powers that are quasi-legislative and others that are quasi-judicial. A decision by the Commission is quasi-judicial if it does "not purport to engage in formal rulemaking or in the promulgation of any regulations" but instead amounts to an adjudication of the rights and obligations of parties before it. *FCC v. Pacifica Foundation,* 438 U.S. 726, 734, 98 S.Ct. 3026, 3032, 57 L.Ed.2d 1073 (1978); *see* 5 U.S.C. § 551 (1988). The mere presence in the decision of general statements that might have applicability to controversies between other persons does not change the character of an order from one that is essentially adjudicatory to one that is quasi-legislative. *FCC v. Pacifica Foundation,* 438 U.S. at 734, 98 S.Ct. at 3032.

■ In rendering its 1992 Decision, the Commission did not promulgate any new regulation or purport to engage in any formal rulemaking. Rather, at the behest of Carino in the context of his dispute, the Commission interpreted its 1986 Regulation and held that the Deerfield Zoning Ordinance was preempted by that regulation and that the state and federal courts in *Carino I, II, III,* and *IV* had decided the preemption issue

erroneously. Thus, the FCC's 1992 Decision was plainly quasi-judicial, not quasi-legislative.

When the FCC has exercised its quasi-judicial powers, its final decision is subject to review by a United States court of appeals. *See* 47 U.S.C. § 402(a) (1988); 28 U.S.C. § 2342(1) (1988); *see also Columbia Broadcasting System, Inc. v. United States,* 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942). Upon such review, the decision of the agency cannot be upheld if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A) (1988), or is "contrary to constitutional ... power," *id.* § 706(2)(B), or is "in excess of statutory jurisdiction, authority, or limitations," *id.* § 706(2)(C).

As discussed below, we conclude that, in deciding to disregard or overrule the judgment entered in *Carino III* in order to grant Carino's petition for a declaratory ruling with respect to his dispute with Deerfield, the FCC contravened several fundamental statutory and constitutional principles.

B. *The Controlling Legal Principles*

■ The judicial power of the United States is allocated by the Constitution to "one supreme Court," and to "such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1. A court established under this provision is given the power to decide only "Cases" or "Controversies." *Id.* art. III, § 2, cl. 1. One facet of the case-or-controversy requirement is that an Article III court is not permitted to render advisory opinions. *See, e.g., Hayburn's Case,* 2 U.S. (2 Dall.) 409, 1 L.Ed. 436 (1792); *United States v. Ferreira,* 54 U.S. (13 How.) 40, 14 L.Ed. 40 (1852); *Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911); *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.,* 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568 (1948); *Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991). Thus, Congress cannot, consistent with the constitution, request, authorize, or require an Article III court

to express an opinion on a case where its judicial power could not be exercised, and

where its judgment would not be final and conclusive upon the rights of the parties. *Gordon v. United States,* 117 U.S. 697, 702 (1865); *see Sierra Club v. Morton,* 405 U.S. 727, 732 n. 3, 92 S.Ct. 1361, 1365 n. 3, 31 L.Ed.2d 636 (1972) ("Congress may not confer jurisdiction on Art. III federal courts to render advisory opinions ... because suits of this character are inconsistent with the judicial function under Art. III."); *Muskrat v. United States,* 219 U.S. at 352, 31 S.Ct. at 252 (neither the legislative nor the executive branch can assign to the judicial branch any duties other than those that are properly judicial); *Hayburn's Case,* 2 U.S. (2 Dall.) at 410 n. (a) (same); *see also Gordon v. United States,* 117 U.S. at 705 (a decision that "may or may not be carried into effect at the pleasure of Congress" is a decision that "binds no one[ and] is no judgment in the legal sense of the term").

■ A judgment entered by an Article III court having jurisdiction to enter that judgment is not subject to review by a different branch of the government, for if a decision of the judicial branch were subject to direct revision by the executive or legislative branch, the court's decision would in effect be merely advisory. *See, e.g., United States v. Ferreira,* 54 U.S. (13 How.) at 49–52. "It is, emphatically, the province and duty of the judicial department, to say what the law is." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). Review of a federal district court judgment may be had only in a federal court of appeals, *see* 28 U.S.C. §§ 1291, 1292 (1988), or the Supreme Court, *id.* § 1253 (1988). Review of a decision of a federal court of appeals may be had only in the Supreme Court. *See id.* § 1254 (1988). And the Supreme Court "is the tribunal which is ultimately to decide all judicial questions confided to the Government of the United States. No appeal is given from its decisions, nor any power given to the legislative or executive departments to interfere with its judgments...." *Gordon v. United States,* 117 U.S. at 700. Thus, Congress cannot "prescribe a rule for the decision of a cause in a particular way," *United States v. Klein,* 80 U.S. (13 Wall.) 128, 146, 20 L.Ed. 519 (1872); *see United States v. Sioux Nation of Indians,* 448 U.S. 371, 402–05, 100

S.Ct. 2716, 2734–35, 65 L.Ed.2d 844 (1980), nor may Congress, consistent with constitutional principles, provide for executive-branch review of a judicial determination, *see, e.g., Chicago & Southern Air Lines v. Waterman Steamship Corp.,* 333 U.S. at 113–14, 68 S.Ct. at 437; *United States v. Ferreira,* 54 U.S. (13 How.) at 49–52; *Hayburn's Case,* 2 U.S. (2 Dall.) at 410 n. (a). Simply put, if a judgment of an Article III court were subject to revision by a coordinate branch, it would not be the exercise of *judicial* power. *See, e.g., District of Columbia v. Eslin,* 183 U.S. 62, 65–66, 22 S.Ct. 17, 18, 46 L.Ed. 85 (1901). Since neither the legislative branch nor the executive branch has the power to review judgments of an Article III court, an administrative agency such as the FCC, which is a creature of the legislative and executive branches, similarly has no such power.

■ Nor may an administrative agency choose simply to ignore a federal-court judgment. "Judgments within the powers vested in courts by the Judiciary Article of the Constitution may not lawfully be revised, overturned *or refused faith and credit* by another Department of Government." *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.,* 333 U.S. at 113, 68 S.Ct. at 437 (emphasis added). If an administrative agency were entitled to "completely disregard the judgment of the court, it would be only because it is one the courts were not authorized to render." *Id.*

■ In sum, Article III courts "render no judgments not binding and conclusive on the parties and none that are subject to later review or alteration by administrative action." *Id.* at 113–14, 68 S.Ct. at 437.

■ When an Article III court is presented with controversies that have previously been resolved by state-court judgments, it is required by federal statute to accord such judgments "the same full faith and credit ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738 (1988); *see Migra v. Warren City School District Board of Education,* 465 U.S. 75, 80–81, 104 S.Ct. 892, 895–96, 79 L.Ed.2d 56 (1984); *Cameron v. Fogarty,* 806

F.2d 380, 384 (2d Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987). To accord full faith and credit to a given state-court judgment, the court must at least apply that state's principles of res judicata and collateral estoppel, *id.,* that is, it must give a prior state-court judgment "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered," *Migra v. Warren City School District Board of Education,* 465 U.S. at 81, 104 S.Ct. at 896.

■ The district court in *Carino III,* an Article III court which indisputably had jurisdiction over Carino's § 1983 action, was presented with the prior judgment of the state court in *Carino I,* affirmed in *Carino II,* that the FCC's 1986 Regulation did not preempt the Deerfield Ordinance. It is undisputed that the *Carino I* court had jurisdiction over Carino's suit, *see* N.Y.Civ.Prac.L. & R. 7803.3 (McKinney 1981) (court in Article 78 proceeding may determine whether governmental body's decision "was affected by an error of law"); and it had the power to decide the preemption issue, for federal courts have not been given exclusive jurisdiction over such questions, *see generally Tafflin v. Levitt,* 493 U.S. 455, 458–60, 110 S.Ct. 792, 793–95, 107 L.Ed.2d 887 (1990); *Martinez v. California,* 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7, 62 L.Ed.2d 481 (1980). It is also clear that the state courts would give the ruling in *Carino I* preclusive effect in any subsequent New York litigation between Carino and Deerfield. *See, e.g., Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490 (1984) (principles of collateral estoppel bar relitigation of an issue, whether of fact or law, if the party against whom estoppel is sought had a full and fair opportunity to litigate the issue and the issue is identical to an issue necessarily decided in the prior action); *id.* at 501, 478 N.Y.S.2d at 826, 467 N.E.2d at 490 (issues are considered identical if a different decision in the second suit would necessarily " 'destroy or impair rights or interests established by the first' ") (quoting *Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp.,* 250 N.Y. 304, 308, 165 N.E. 456 (1929) (Cardozo, C.J.)). Thus, the *Carino III* court, presented by Carino with precisely the

same preemption issue he had raised in *Carino I,* was required by 28 U.S.C. § 1738 to accord the *Carino I* judgment the same preclusive effect; and it did so, ruling that by reason of the judgment in *Carino I,* the Deerfield Ordinance was not preempted. The judgment in *Carino III* thereby conclusively resolved the dispute between Carino and Deerfield as to whether the Zoning Ordinance was preempted by the FCC's 1986 Regulation.

■ The FCC's 1992 Decision, by refusing to recognize the conclusive effect of the judgment in *Carino III,* does not comport with the above legal principles. By incorporating in its regulation a policy of requiring "exhaust[ion]" of judicial remedies, the Commission in effect sought to modify the jurisdiction of Article III courts, with respect to any issue of the preemptive effect of § 25.104, to deprive them of the power to render anything but advisory opinions. As discussed above, the Commission plainly has no power to request or require such a court to render an opinion that is merely advisory. Nor has the Commission called to our attention any authority—and we are aware of none—giving it the power to prevent an Article III court from performing its duty to render a binding judgment in a live case or controversy. *Cf. Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 15, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983) (absent exceptional circumstances, a district court may not abstain from adjudicating a case or controversy properly before it, for "the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them' ") (quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976)).

The Commission's notion that it would be "unfair" to Carino for the Commission not to decide his case in light of its advice to him that he must exhaust his judicial remedies before the agency would step in is wide of the mark. First, we see no unfairness since Carino had an adequate opportunity to litigate the issue in the state courts; second, both sides, not just Carino, have spent considerable sums pursuing judicial resolution of

**430**

the controversy; and most importantly, the Commission's preference to eschew immediate agency action cannot alter the constitutional principle that an agency has no power to review, alter, or prevent enforcement of the judgment of an Article III court. The procedure adopted by the FCC apparently reflected its reluctance to commit resources to involvement in every individual zoning dispute that might occur. But the mere fact that a given procedure might be "efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution." *INS v. Chadha*, 462 U.S. 919, 944, 103 S.Ct. 2764, 2781, 77 L.Ed.2d 317 (1983).

In sum, we conclude that by declining to become involved in the controversy over whether § 25.104 preempted the Deerfield Ordinance until after the Article III court proceedings had been completed and insisting that it is entitled to decide anew questions decided by the courts, the FCC has in effect attempted (1) to impose on the courts the obligation to give no opinion on preemption other than one that would be purely advisory, and/or (2) to arrogate to itself the power to (a) review or (b) ignore the judgments of the courts. In light of the principles discussed above, all of these attempts are impermissible as a matter of law.

## CONCLUSION

We have considered all of the FCC's arguments on this petition for review and have found them to be without merit. The petition for review is granted, and the order of the FCC is reversed.