NEWMAN, Circuit Judge,
dissenting.
The Patent and Trademark Office’s Board of Patent Appeals and Interferences, on reexamination of a patent that had previously been litigated to final judgment in the district court and on appeal to the Federal Circuit, states that “the agency is not bound by the court’s determination.” BPAI Op. at 26. My colleagues appear unperturbed by the agency’s nullification of this court’s final decision. Instead, the court itself ignores our own prior final decision, although it is the law of this case. Thus the court violates not only the constitutional plan, but also violates the rules of litigation repose as well as the rules of estoppel and preclusion— for the issue of validity, the evidence, and the parties in interest are the same in this agency reexamination as in the finally resolved litigation.
No authority, no theory, no law or history, permits administrative nullification of a final judicial decision. No concept of government authorizes an administrative agency to override or disregard the final judgment of a court. Judicial rulings are not advisory; they are obligatory. In San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005) the Court explained:
The general rule implemented by the full faith and credit statute — that parties should not be permitted to relitigate issues that have been resolved by courts of competent jurisdiction — predates the Republic. It “has found its way into every system of jurisprudence, not only from its obvious fitness and propriety, but because without it, an end could never be put to litigation.”
*1367 Id. at 336-37, 125 S.Ct. 2491 (quoting Hopkins v. Lee, 19 U.S. (6 Wheat.) 109, 114, 5 L.Ed. 218 (1821)).
Finality is fundamental to the Rule of Law. In Southern Pacific Railroad v. United States, 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355 (1897) the Court stressed the importance of repose and conclusiveness following upon judicial decision:
This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, con-elusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.
Id. at 49, 18 S.Ct. 18. All departments of government are bound by the finality of the judicial ruling. “Judgments, within the powers vested in courts by the Judiciary Article of the Constitution, may not lawfully be revised, overturned or refused faith and credit by another Department of Government.” Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 114, 68 S.Ct. 431, 92 L.Ed. 568(1948).
In Plant v. Spendthrift Farm, Inc., 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) the Court traced the finality of judicial rulings in relation to the executive branch to Haybum’s Case, 2 U.S. (2 Dali.) 409, 1 L.Ed. 436 (1792), which “stands for the principle that Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch.” Plant, 514 U.S. at 218, 115 S.Ct. 1447. The Court explained:
The record of history shows that the Framers crafted this charter of the judicial department with an expressed understanding that it gives the Federal Judiciary the power, not merely to rule on cases, but to decide them, subject to review only by superior courts in the Article III hierarchy — with an understanding, in short, that “a judgment conclusively resolves the case” because “a ‘Judicial Power’ is one to render dispositive judgments.”
Id. at 218-19, 115 S.Ct. 1447 (quoting Frank H. Easterbrook, Presidential Review, 40 Case W. Res. L.Rev. 905, 926 (1990)) (emphasis in original). In Town of Deerfield v. Federal Communications Commission, 992 F.2d 420, 428 (2d Cir. 1993), the court elaborated that revision by the FCC of the court’s order would render the court’s previous judgment merely advisory, and thus in violation of the Constitution.
Yet this court continues to authorize the Patent and Trademark Office to “revise, overturn, and refuse full faith and credit” to final judgments of the courts, in the words of Chicago & Southern Air Lines, 333 U.S. at 114. Such agency action has not been authorized by any other court. To the contrary, when the judicial decision is final as to the issue before the agency, the decision is binding on the agency. Finality is reflected in the law of the case doctrine, which “promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues.” Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 815-16, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). This universal doctrine in not new to the Federal Circuit, see, e.g., Suel v. Secretary of Health & Human Services, 192 F.3d 981, 984-85 (Fed.Cir.1999) (The law of the case doctrine “ensures judicial efficiency and prevents endless litigation. Its elementary logic is matched by elementary fairness — a litigant given one good bite at the apple should not have a second.”); PerkinElmer Corp. v. Computervision Corp., 732 *1368 F.2d 888, 900 (Fed.Cir.1984) (the law of the case doctrine is designed to put an end to issues that have been fully litigated and resolved).
The theories of preclusion implement the fundamentals of judicial finality, for a final judicial determination controls the issue in all forums. See Federated Dep’t Stores, Inc. v. Moitie, 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (“This Court has long recognized that ‘[plublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.’ ”) (quoting Baldwin v. Traveling Men’s Ass’n, 283 U.S. 522, 525, 51 S.Ct. 517, 75 L.Ed. 1244 (1931)). In Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) the Court explained that “res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.” Applying these principles to patent reexamination of the same issues of fact and law as were decided in judicial proceedings, the principles of preclusion apply. A patent that has been adjudicated to be valid cannot be invalidated by administrative action, any more than a patent adjudicated to be invalid can be restored to life by administrative action.
In enacting the various reexamination statutes, Congress did not purport to violate the constitutional strictures governing finality of judicial process. The possibilities for vexation and abuse were perceived from the initiation of reexamination; when the first reexamination statute was proposed, Patent Commissioner Diamond testified that the statute contained various safeguards and “carefully protects patent owners from reexamination proceedings brought for harassment or spite. The possibility of harassing patent owners is a classic criticism of some foreign reexamination systems and we made sure it would not happen here.” Hearings on H.R. 6933, 6934, 3806 & 215, Industrial Innovation & Patent & Copyright Law Amendments, House Comm, on the Judiciary, 96th Cong., 2d Sess. 594 (1980). Nonetheless, commentators were skeptical; for example, Anthony H. Handal, Re-examination: Some Tactical Considerations — A Private Practitioner’s Viewpoint, 9 AIPLA Q.J. 249 (1981), explained that
a party threatened with litigation has the opportunity to file reexamination requests on the patents concerned, or without doing anything, has the threat of such action to use in any negotiation which may be in progress. Likewise, a threatened party also has the opportunity of putting a number of patents into reexamination which are not even related to the subject matter of the threat. Thus, even where the party threatened with litigation is in a relatively weak position with respect to the asserted patents, he can very viably threaten to retaliate against the patent owner by counter-attacking where the patent owner is in a relatively weak position.
Id. at 251. When reexamination was later enlarged, an article by William J. Speranza and Michael L. Goldman, Reexamination—The Patent Challenger’s View, 69 J. Pat. & Trademark Off. Soc’y 295 (1987) remarked that reexamination “has potential for misuse by the patent challenger to achieve less-than-noble aims, such as delay or harassment, in an effort to escape liability where no legitimate defense exists.” Id. at 296.[1]
*1369 Today, reexamination is part of the tactical armory of litigators. However, throughout this history, including the current legislative proposals to make reexamination more useful as a less costly alternative to litigation, we have uncovered no suggestion that reexamination is intended to deprive a final judgment of the full faith and credit attendant upon final judgments. We have found no hint that reexamination of the question of patentability is intended to override judicial resolution of the question of patentability. Nor would such legislation be contemplated, for “Article III, § 1 safeguards the role of the Judicial Branch in our tripartite system by barring congressional attempts ‘to transfer' jurisdiction [to non-Article III tribunals] for the purpose of emasculating’ constitutional courts, and thereby preventing ‘the encroachment or aggrandizement of one branch at the expense of the other.’ ” Commodity Futures Trading Comm’n v. Schor, 478 U.S. 833, 850, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (brackets in original, citations omitted). The Court stressed that “Article III, § 1, not only preserves to litigants their interest in an impartial and independent federal adjudication of claims within the judicial power of the United States, but also serves as ‘an inseparable element of the constitutional system of checks and balances.’ ” Id. (quoting N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 58, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)).
Administrative agency override of judicial final decisions has no counterpart in any other field of subject matter. From the inception of judicial process in the nation, it was established that decisions of Article III courts are not subject to negation by proceedings in the other branches. The validity of the Baxter patent was resolved upon litigation in the district court and on appeal to the Federal Circuit. This judgment cannot be “revised, overturned or refused full faith and credit by another Department of Government.” Chi. & S. Air Lines, 333 U.S. at 114, 68 S.Ct. 431. Nonetheless, the court again departs from this principle, trivializes our prior final judgment, and simply defers to the conflicting agency ruling. This is improper.
I support the concept of reexamination as an efficient and economical alternative to litigation in appropriate cases. My concern is with the distortion of this purpose, which was designed to provide a path to relief not available through the existing examination process. It was not intended to undermine the finality of judicial process; it was not intended to negate the repose provided by adjudication.
The only patents that are reexamined, like the only patents that are litigated, are patents on inventions that are of value. Most reexamination requests are granted by the PTO.[2] Reexamination of the Baxter patent was requested by Fresenius in 2005, two years into the litigation of Fresenius’ declaratory judgment action against Baxter. The reexamination request presented to the PTO the same references that Fresenius had presented in *1370 the litigation. Judgment in the district court was adverse to Fresenius, and the Federal Circuit’s final judgment was issued in 2009, a year before the reexamination decision of the PTO Board. The Board stated that “the agency is not bound by the court’s determination.” BPAI Op. at 26. However, when there has been full litigation and final adjudication under Article III, the judicial resolution controls. Instead, my colleagues ignore this court’s prior decision, which is the law of this case, and simply defer to the PTO, stating that its reexamination ruling is “supported by substantial evidence.” Op. at 11-13 & 16. The nature of the burden of proof does not overcome the strictures of judicial finality.
The reexamination of Baxter’s patent claims 26-29 and 31 was based solely on the same references on which Fresenius relied in the litigation. In response to the panel’s request during oral argument, Baxter’s counsel wrote that “all of the art relied upon by the Examiner to reject claims 26-29 and 31 of the '434 patent (ie., Lichtenstein '983, the Fresenius CMS08 Handbook, the Sarns 9000 Perfusion System Operators Manual, Rubalcaba '578, and Kerns '706, see A9283) had been presented by Fresenius to the district court,” Letter from William F. Lee (February 22, 2012). The PTO Deputy Solicitor wrote that “The Examiner only found Thompson,” Letter from Sydney O. Johnson, Jr. (February 17, 2012); the Thompson reference was cited only against claim 30, for showing the inclusion of an anticoagulant in the dialysis. This aspect does not appear to be significant to the reexamination, but if it were, the failure of Fresenius to present such issue does not negate the finality of the decision upon full adjudication. See Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction, § 4426 at 141 (1981) (“Preclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first.”). Reexamination of the Baxter patent lasted from 2005 to 2010, continuing for a year after final decision in the Federal Circuit.
My colleagues justify the PTO’s authority to overrule judicial decisions on the argument that the standard of proof is different in the PTO than in the courts. That theory is flawed, for obviousness is a question of law, and the PTO, like the court, is required to reach the correct conclusion on correct law. Any distinction between judicial and agency procedures cannot authorize the agency to overrule a final judicial decision. Even if the Federal Circuit were believed to have erred in its prior decision, the mechanism for correcting an unjust decision is by judicial reopening, not by administrative disregard. See Christianson, 486 U.S. at 817, 108 S.Ct. 2166 (“A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.”). This procedure did not occur in this case.
The court’s final judgment cannot be overridden by administrative proceeding. I respectfully dissent.

. A significant number of patents in litigation are also subject to reexamination. USPTO Reexamination Filing Data — September 30, 2011, http://www.uspto.gov/patents/stats/ index.jsp (70% of patents undergoing inter partes reexamination and 33% of patents un *1369 dergoing ex partes reexaminations are known to be in litigation). It is reported that 11% of patents accepted for reexamination by the USPTO are reexamined more than once, one as many as six times. Robert G. Sterne et al., Reexamination Practice with Concurrent District Court Litigation or Section 337 USITC Investigations, 11 Sedona Conf. J. 14 (Sept. 2010).

. The PTO reports that in 2007 through 2011 the percentage of reexamination requests granted was 97.1% in FY2007; 94.0% in FY2008; 93.5% in FY2009; 91.7% in FY2010; and 89.3% in FY2011. USPTO Performance and Accountability Report for Fiscal Year 2011, Table 14A at 171, http://www.uspto.gov/ aboul/stratplan/ar/index.jsp. The report does not distinguish whether the requests were filed by the patentee or by a third party.